In re CHICAGO & E, I. RY. CO.

GOURLEY v. WHAM.

No. 7321.

Circuit Court of Appeals, Seventh Circuit.

June 11, 1941.

Joseph D. Ryan, of Chicago, Ill., for appellant.

Benjamin Wham, K. L. Richmond, and Geo. I. Haight, all of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

EVANS, Circuit Judge.

The District Court's refusal to recognize a state court judgment rendered after Sec. 77, Bankr.Act, 11 U.S.C.A. § 205, railroad reorganization proceedings were instituted against debtor, as a "proof" of claim, and ordering the claim sent back to the master for hearing on the merits, is the challenge of this appeal.

Appellant recovered a $60,000 personal injury judgment in the Illinois state court, and predicated his claim thereon in debtor's reorganization proceedings in the Federal court.

Debtor filed its petition for reorganization on April 18, 1933. Thereafter—but before appointment of a trustee, and while debtor was operating the road under order of the court—appellant, who was an engineer on another railroad, was seriously injured in a collision, which occurred on August 3, 1933. Two months later, September 15, 1933, Charles M. Thomson was appointed trustee of debtor, and later, on June 20, 1934, appellant sued Thomson as trustee of debtor in the Superior Court of Cook County, for damages based on his injury and the debtor's alleged negligence.

Because the history of the state court suit may have an important bearing on the disposition of this appeal, we outline the occurrences in the state court, as shown by the colloquy [1] of counsel before the master.

---

[1] "The Master: Did Charles M. Thomson drop out of that case after the amendment?

"Mr. Miller: I suppose in law it effected a discontinuance as to Charles M. Thomson. As I understand the rule to be, if you have a defendant in a proceedings, and do not state a case against him, he is dismissed by operation of law. However, no formal order of the dismissal was ever entered as to Charles M. Thomson. The case proceeded to verdict, * * * ($80,000). The defendant's motion for judgment, *non obstante veredicto*, was sustained, and judgment entered in favor the defendant * * * in the Superior Court of Cook County, the time of the judgment being June 11, 1937. Thereafter, the plaintiff appealed to the Appellate Court of Illinois. The Appellate Court, on May 3, 1938, filed its opinion, reversing the judgment of the Superior Court of Cook County and giving the

The state court action was originally brought against the trustee, who filed an answer denying that he was operating the road at the time of the accident. Then an "additional count" was filed, naming both the trustee and railroad as defendants, to which the railroad answered, and the trustee moved (on Nov. 13, 1934) to dismiss himself as a party, on the ground that the alleged tort was committed before his appointment, and he was therefore not liable. No order was ever entered on the trustee's

plaintiff the alternative of remitting $20,000 from his $80,000 verdict or taking a new trial. The plaintiff elected to file a remittitur, whereupon a mandate of the Appellate Court was issued, which was filed in the Superior Court of Cook County in due course, and, on June 18, 1938, pursuant to mandate, the Superior Court of Cook County entered judgment in favor of plaintiff and against the C. & E. I. for $60,000. * * * Petition for leave to appeal was subsequently filed in the Supreme Court by defendant. That petition was denied on October 14, 1938.

"Mr. Richmond: His statement of the facts, so far as I recall, is correct. I might say that this suit was originally begun against the Trustee, and afterward they filed an amended complaint, setting up the case against the railroad company alone, dropping the Trustee from the case.

"The Master: By order or voluntarily?

"Mr. Richmond: Changing the complaint and not naming the Trustee as defendant.

"Mr. Miller: I suppose that an examination of the Trustee's records would indicate that the fees for the defense of this case were paid by the Trustee?

"Judge Thomson: Paid out of the estate of the Debtor by the Trustee.

"Mr. Ryan: Under the order of the court?

"Judge Thomson: Under the general order of the court. There wasn't a specific order, covering those fees. They were paid pursuant to the authority the Trustee had as such Trustee under the general order of the court.

"Mr. Ryan: And regarded as an administrative expense?

"Judge Thomson: Those fees, the costs of defending this case?

"Mr. Ryan: Yes.

"Judge Thomson: Yes, surely.

"Judge Thomson: That is all right with me. On March 2, 1936, I filed an answer to that amended complaint, as amended.

"The Master: With reference to the motion to dismiss the Trustee as a party: just what was done by the court, if anything?

"Mr. Ryan: No action was taken.

"Judge Thomson: The court didn't do anything. Instead of any order being entered on that, the claimant * * * the claimant took a new hold, so to speak, by filing a new complaint against the Chicago and Eastern Illinois Railway Company. as sole defendant, and that automatically bowed me out. An answer was filed on behalf of the Chicago and Eastern Illinois Railway Company, a corporation, the issue was joined, and we went to trial.

"The Master: No order was ever entered?

"Mr. Ryan: No order was entered.

"Mr. Richmond: My understanding is that the court never passed upon it.

"Mr. Miller: The title of that amendment preserved both defendants, but the amendment itself only charged negligence against the Railway Company and did not charge negligence against Judge Thomson as Trustee.

"The Master: Let me call attention to something in the Trustee's brief, where it says: 'Thereafter the claimant, Arthur F. Gourley, filed an amended complaint against Chicago and Eastern Illinois Railway Company, a corporation, alone, thus dismissing the suit as to Charles M. Thomson, Trustee.'

"Judge Thomson: I am referring to that as the effect of it. There wasn't any order entered, but, following that motion, the counsel for the claimant came in and filed an amended complaint against the Chicago and Eastern Illinois Railway Company, a corporation.

"The Master: Have you got your Exhibit 2, the motion you filed? I would like to see it now?

"(Exhibit examined by the Master.)

"Mr. Ryan: I don't know. When we filed the amended complaint we left the title the same, against Charles M. Thomson, as Trustee, and the Chicago and Eastern Illinois Railway Company, but only charged negligence against the Chicago and Eastern Illinois, which, I suppose, at law automatically dismissed the Trustee so far as actual trial of the case was concerned.

"The Master: That was the legal effect?

"Mr. Ryan: I am afraid we will have to make that admission.

"The Master: I want that quite definitely understood, if I may."

motion to dismiss, but appellant filed (on January 24, 1935) an amended complaint naming only the railroad as defendant. The debtor, by its attorneys, filed an answer to the amended complaint. It was on this complaint and with these parties that judgment was finally entered upon direction of the Illinois appellate court. Gourley v. Chicago & E. I. Ry. Co., 295 Ill.App. 160, 14 N.E.2d 842.

Appellant filed his claim in the reorganization proceedings, and it was referred to a special master (Mr. Boesel), who received the evidence and heard the attorneys and filed an extremely helpful, careful, and able report finding that the claim based on a judgment rendered by a state court *after* bankruptcy proceedings were begun, in an action wherein the trustee is not a party defendant, is not "proved" within the meaning of the bankruptcy act.

In upholding the master's report, the trial court said:

"The court agrees with the conclusions of the Master. Section 77, sub. j, of the Bankruptcy Act permits suits to be prosecuted in courts other than the bankruptcy court, but it does not authorize the rendition of judgments therein binding on the debtor's estate unless the estate is represented therein. The Trustee was not a party to the action in the Superior Court of Cook County and is not estopped to question the judgment of that court. The estate of the debtor has never had a hearing and is entitled to one."

The Issues: (1) Is an order made in a court of bankruptcy and holding a state court judgment insufficient to "prove" a claim and directing a re-reference of the claim for a determination of its merits, an appealable order?

(2) What is the effect of a state court judgment entered against the debtor after bankruptcy, on a claim that arose after reorganization proceedings had been instituted under Section 77 of the Bankruptcy Act, and wherein the trustee of the debtor's estate was not a party defendant? If disallowed as a valid judgment against debtor's estate may it be retried and modified in the court of bankruptcy?

(3) Did the District Court (impliedly) consent to the prosecution of the state court suit by authorizing the payment of the costs of such defense, and by its trustee continuing in active charge of debtor's defense, although not a nominal party thereto?

(4) What is the effect of the Section 77, sub. j, proviso?[2] Does it authorize the personal injury claimant to take out of bankruptcy cognizance all personal injury cases?

Appellee's position briefly stated is: (a) The U. S. District Court has exclusive jurisdiction of railroad debtors and of all property belonging to such debtors wherever located, after said debtors are adjudicated. (b) No other court may, without the District Court's consent, take jurisdiction of a suit against the debtor, or attach its property or burden its estate with a lien. (c) The instant suit was not authorized by the U. S. District Court and therefore the court wherein the judgment was entered was without jurisdiction of the action. Its judgment is a nullity. It is therefore argued by appellee that the judgment which appellant presented to the master and later to the court, is null and void and the appellant stands like any other claimant with the burden of establishing the merits of his claim.

The soundness of this syllogism could not be successfully disputed were it not for two factors unmentioned in either the major or the minor premise.

The first is Section 77, sub. j, of the said Act which excepts from the exclusive jurisdiction of the District Court certain personal injury actions. It reads:

"In addition to the provisions of section 29 of this title for the staying of pending suits against the debtor, the judge may enjoin or stay the commencement or continuation of suits against the debtor until after final decree; and may, upon notice and for cause shown, enjoin or stay the commencement or continuance of any judicial proceeding to enforce any lien upon the estate until after final decree: *Provided*, That suits or claims for damages caused by the operation of trains, busses, or other means of transportation may be filed and prosecuted to judgment in any court of competent jurisdiction and any order staying the

---

[2] "Provided, That suits or claims for damages caused by the operation of trains, busses, or other means of transportation may be filed and prosecuted to judgment in any court of competent jurisdiction and any order staying the prosecution of any such cause of action or appeal shall be vacated."

prosecution of any such cause of action or appeal shall be vacated. * * *"

Appellant's claim was for damages caused by the operation of the debtor's trains.

The second distinguishing fact is the action of the trustee in defending the suit and paying the costs of trying the same and of the appeal from the state appellate court to the Illinois Supreme Court.

**Scope of Section 77, sub. j.** Appellee contends that Section 77, sub. j, does not apply to causes of action arising *after* bankruptcy adjudication. In support of this position he refers to the language of the first sentence of said subsection, and particularly to the words "the staying of *pending* suits." Like emphasis is placed upon the expression "suits against the *debtor*" as used in this section. Appellee stresses the use of the word "pending" in the first quotation and "debtor" in the second quotation, and draws the conclusion that the proviso clause of Section 77, subsection j, applies only to the causes of action which arose prior to the debtor's adjudication.

In opposition to this construction of the language we find it difficult to avoid the words "in *addition*" as used at the beginning of the first sentence. It suggests there is something "in addition" to "pending suits." Further significance attaches to the use of the words "*commencement* * * * of suits." Dealing now with sentence structure, we might add that the clause in question which begins with the words "Provided, That suits or claims for damages" is not limited by the words "against the debtor," from which fact the conclusion might be fairly drawn that the first part of this sentence refers to claims against the debtor which existed prior to adjudication, and that suits for damages arising out of personal injuries were the subject of a special provision which covers all cases arising after as well as those which occurred before the adjudication.

Equally significant is the provision for vacation of any stay order already in effect. Construing the proviso as a whole, it would seem the Congress intended to avoid *any* stay order in *any* of these cases where the action was for a judgment for damages arising out of the operation of the trains.

The general scheme and purpose of the exception support this view. What reason or reasons did Congress have for making this exception? We can hardly call it speculation when we suggest several which at once present themselves.

It evidently placed personal injury claims on a different footing from other claims, whose origin was traceable to an agreement, express or implied. It is not inconsistent with historical analogies to place injuries to the person in a class different from all other kinds of claims. This Act gives to holders of such claims preference, so far as jurisdiction is concerned, over claimants holding contractual claims. It permits the claimants to sue in the state court and in any Federal court, as well as the one which has jurisdiction of the debtor's estate.

The plaintiff can thus have the benefit of a jury trial, if he so desires. This in itself is sufficient grounds for making a distinction between claims arising out of personal injuries and other kinds, where a jury trial is not thought so essential.

Giving jurisdiction to local courts of personal injury cases permits the claimant to sue in local jurisdictions, thus avoiding burdensome cost and long delays which in some instances might be said to be a denial of justice.

Whatever may have been the reasons, it is clear that the Congress intended to and did make special provision for personal injury cases arising out of the operation of trains. And there is no clear and sufficient reason advanced for dividing the list of such personal injury claims into those which arose before the adjudication and those whose claims occurred subsequently.

**The fair and rational construction of this exception to the exclusive jurisdiction of the U. S. District Court is that Congress intended to permit those holding claims for damages caused by the operation of the trains to sue in any court of competent jurisdiction. From this rationalization we further conclude as self evident that a judgment validly entered by such court of competent jurisdiction is binding upon the court of bankruptcy when a claim based upon such judgment is presented.

**There arises, however, a question as to whether the Superior Court of Cook County had jurisdiction of the suit without the consent of the court of bankruptcy. While it would be better for one about to sue a debtor railroad operating through the U. S. District Court to obtain the consent of the District Court, we see no necessity for its doing so, in view of this proviso.

■ "Competent jurisdiction" does not here have reference to jurisdiction based upon consent of the court of bankruptcy. It refers to the jurisdiction of the court as fixed by the laws of the state wherein the accident occurred or where the suit is brought.

■ If it were necessary to have the U. S. District Court's consent, however, the record affirmatively shows such consent. Consent to bring an action, other than in the court of bankruptcy, need not be evidenced by formal order. The court's action in authorizing the defense of this case in the state court and the payment of the costs of such defense, and of the appeals which followed, must be construed as an implied consent to the bringing and maintenance of the action. Mills v. Smith, 7 Cir., 113 F.2d 404; Doherty Co. v. Universal Co., 7 Cir., 107 F.2d 548.

As was said in the Mills case [113 F.2d 408]:

"We are convinced that the receiver would have been authorized to defend that litigation had he won. Only after he lost did he find he was without authority to defend the action. His appeals wherein he paid the expenses and attorney's fees are in like position. The theory of lack of authority to prosecute appeals would not have occurred to the receiver nor to his counsel and authority would have been found in ratification had the appeals resulted in a reversal instead of the affirmance of the judgment.

"We can not approve of such conduct which reflects both upon litigant and his defenses. In fact, we disapprove. Nor does the law require us to invalidate the judgment rendered under such circumstances."

We fear the master in his exhaustive report has given too much attention to the study of the cases, and perhaps ignored the intention of Congress; expressed by this legislation, to place holders of personal injury claims in a class different from all other claimants. What distinguishes this case from the many cited in the master's report is this proviso we have been considering. In making this exception, Congress has done what has often been done by legislative bodies,—favored claimants as a class whose causes of action arise out of personal injuries traceable to the alleged negligence of a railroad.

■ It is not for us to pass judgment on the wisdom of such a distinction.

In conferring exclusive jurisdiction of a debtor railroad, Congress could and did make an exception. In such case the United States District Court has only concurrent jurisdiction.

*Motion to Dismiss Appeal.* Appellee has moved to dismiss the appeal because the order is not an appealable one.

*The Record.* Appellant sought to support a claim by him filed, by proof of a judgment entered in the Superior Court of Cook County, Illinois, a court of competent jurisdiction. The master made a recommendation that it "be determined at this time that this claim, based upon the judgment therein referred to, is not 'proved' within the meaning of the Bankruptcy Act, and decisions thereunder, by the mere filing and receiving in evidence of a certified copy of said judgment, and that the Special Master be directed 'to hear the claim upon its merits apart from the judgment itself,' * * * *"

The court approved the report of the master and overruled the objections thereto. As the terms of this order are important, we set it forth *haec verba*:

"It Is Ordered, Adjudged and Decreed that the objections to said report be, and the same are hereby, overruled, and that the said report be, and hereby is, in all respects confirmed.

"It is Further Ordered, Adjudged and Decreed that the judgment obtained in the Superior Court of Cook County in favor of the claimant and against the Chicago and Eastern Illinois Railway Company, Debtor, founded on a tort committed by the Debtor while it was continued in possession under order of the Court and before a Trustee was appointed, in suit commenced after the appointment of the Trustee, and prosecuted without the order, direction, or consent of this Court, does not constitute a liquidation of the claim for the purpose of proof and allowance in these proceedings.

"It Is Further Ordered, Adjudged, and Decreed that the claim be sent back to the Special Master for hearing on the merits apart from the judgment itself and for a further report thereon."

The argument in support of this motion presents some amazingly unsettled questions. The ghost of the old question,— what's a controversy, what's a proceeding

in bankruptcy—stalks somewhat insolently in our midst. He seems to have intimate contacts with all the counsel and a speaking acquaintance with the individual members of the court. We believed, or at least hoped, that the amendment to Section 24 of the Bankruptcy Act, 11 U.S.C.A. § 47, had buried deep this old disturber of bankruptcy court tranquility. That section, as amended, reads:

"The Circuit Courts of Appeals of the United States * * * are hereby invested with appellate jurisdiction from the several courts of bankruptcy in their respective jurisdictions in proceedings in bankruptcy, either interlocutory or final, and in controversies arising in proceedings in bankruptcy, to review, affirm, revise, or reverse, both in matters of law and in matters of fact: * * *

"Such appellate jurisdiction shall be exercised by appeal and in the form and manner of an appeal."

We deny the motion to dismiss without elaborating our reasons. We feel constrained, however, to state the several bases for our holding. They are:

 (1) The distinctions between "proceedings in bankruptcy" and "controversies arising in bankruptcy proceedings" as they originally existed in Section 24 of the Bankruptcy Act, have been eliminated by the Chandler Act. Dickinson Industrial Site v. Cowan, 309 U.S. 382, 387, 60 S.Ct. 595, 84 L.Ed. 819. See also the Senate Committee Report.

(2) The decree (or order) of the District Court is a final decree, at least in part, and therefore under any circumstances is appealable.

(3) The order is appealable under Section 24, even though it were not a final order.

(4) The litigation on this claim, which arose after adjudication of debtor, and out of the operation of the debtor, is a proceeding in bankruptcy, and an appeal lies from an adverse order made therein, whether said order is final or interlocutory. The fact that the claim arose out of the operation of the railroad *after the adjudication* is significant.

(5) Plaintiff's claim is in the nature of an administrative expense, which would, were it not for the proviso of Section 77, sub. j, be subject to the court's approval. Section 77, sub. j, upon the facts here

shown, takes from the District Court all controversy as to amount where there has been a trial and a judgment in another court of competent jurisdiction. Its nature and status as an administrative expense, rather than a claim of a creditor against the debtor who later is adjudged a bankrupt, serves to emphasize its "proceeding in bankruptcy" character, from an order in which an appeal will lie, whether final or interlocutory.

The motion to dismiss the appeal is denied. The judgment of the District Court is reversed, with directions to proceed in accordance with the views here expressed.