## MORRIS *v.* JONES, DIRECTOR OF INSURANCE.

No. 62. Argued December 9, 10, 1946.—Decided January 20, 1947.

*J. L. London* and *Ford W. Thompson* argued the cause and filed a brief for petitioner.

*Ferre C. Watkins* argued the cause for respondent. With him on the brief were *Charles F. Meyers, Otis F. Glenn* and *Raymond G. Real.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case presents a substantial question under the Full Faith and Credit Clause (Art. IV, § 1) of the Constitution.

Chicago Lloyds, an unincorporated association, was authorized by Illinois to transact an insurance business in Illinois and other states. It qualified to do business in

Missouri. In 1934 petitioner sued Chicago Lloyds in a Missouri court for malicious prosecution and false arrest. In 1938, before judgment was obtained in Missouri, respondent's predecessor was appointed by an Illinois court as statutory liquidator for Chicago Lloyds. The Illinois court fixed a time for the filing of claims against Chicago Lloyds and issued an order staying suits against it. Petitioner had notice of the stay order but nevertheless continued to prosecute the Missouri suit. At the instance of the liquidator, however, counsel for Chicago Lloyds withdrew from the suit and did not defend it, stating to the Missouri court that the Illinois liquidation proceedings had vested all the property of Chicago Lloyds in the liquidator. Thereafter petitioner obtained a judgment in the Missouri court and filed an exemplified copy of it as proof of his claim in the Illinois proceedings. An order disallowing the claim was sustained by the Illinois Supreme Court against the contention that its allowance was required by the Full Faith and Credit Clause. 391 Ill. 492, 63 N. E. 2d 479.

The case was brought here by appeal. We postponed the question of jurisdiction to the merits. Under the rule of *Roche* v. *McDonald*, 275 U. S. 449, 450, the question whether full faith and credit should have been given the Missouri judgment does not present a ground for appeal. But treating the jurisdictional statement as a petition for certiorari (Judicial Code § 237 (c), 28 U. S. C. § 344 (c)), that writ is granted; and we come to the merits of the controversy.

The Full Faith and Credit Clause and the statute which implements it (R. S. § 905, 28 U. S. C. § 687) require the judgments of the courts of one State to be given the same faith and credit in another State as they have by law or usage in the courts of the State rendering them. The Illinois Supreme Court concluded that compliance with that mandate required that precedence be given to the

Illinois decree appointing the statutory liquidator. It held that title to all the property of Chicago Lloyds, wherever located, vested in the liquidator; that the liquidator was entitled to keep and retain possession of the property to the exclusion of the process of any other court; that although Missouri might give priority to Missouri creditors in the property of the debtor located there,[1] *Clark* v. *Williard,* 292 U. S. 112, the Missouri judgment could have no priority as respects Illinois assets; that if a liquidator had been appointed in Missouri, petitioner could not have obtained his judgment, or if he had obtained it, he could not have enforced it against the property in the hands of the Missouri liquidator, see *McDonald* v. *Pacific States Life Ins. Co.,* 344 Mo. 1, 124 S. W. 2d 1157; and that to disallow the judgment in the Illinois proceedings is, therefore, to give it the same effect that it would have had under the same circumstances in Missouri.

*First.* We can put to one side, as irrelevant to the problem at hand, several arguments which have been pressed upon us. We are not dealing here with any question of priority of claims against the property of the debtor. For in this proceeding petitioner is not seeking, nor is respondent denying him, anything other than the right to prove his claim in judgment form. No question of parity of treatment of creditors, or the lack thereof (see *Blake* v. *McClung,* 172 U. S. 239), is in issue. Nor is there involved in this case any challenge to the Illinois rule, which follows *Relfe* v. *Rundle,* 103 U. S. 222, that title to all the property of Chicago Lloyds, wherever located, vested in the liquidator. Nor do we have here a challenge to the possession of the liquidator either through an attempt to obtain a lien on the property or otherwise. As pointed out in *Riehle* v. *Margolies,* 279 U. S. 218, 224, the distribution

---

[1] It does not appear that there is any property of the debtor in Missouri; nor was a liquidator appointed in Missouri.

of assets of a debtor among creditors ordinarily has a "two-fold aspect." It deals "directly with the property" when it fixes the time and manner of distribution. No one can obtain part of the assets or enforce a right to specific property in the possession of the liquidation court except upon application to it. But proof and allowance of claims are matters distinct from distribution. They do not "deal directly with any of the property." "The latter function, which is spoken of as the liquidation of a claim, is strictly a proceeding *in personam.*" *Id.*, p. 224. The establishment of the existence and amount of a claim against the debtor in no way disturbs the possession of the liquidation court, in no way affects title to the property, and does not necessarily involve a determination of what priority the claim should have. And see *Chicago Title & T. Co.* v. *Fox Theatres Corp.*, 69 F. 2d 60.

One line of cases holds that where a statutory liquidator or receiver is appointed, the court taking jurisdiction of the property draws unto itself exclusive control over the proof of all claims.[2] But the notion that such control over the proof of claims is necessary for the protection of the exclusive jurisdiction of the court over the property is a mistaken one. As Justice Beach of the Supreme Court

[2] *Attorney General* v. *Supreme Council*, 196 Mass. 151, 159, 81 N. E. 966 (receivership); *Hackett* v. *Supreme Council*, 206 Mass. 139, 142, 92 N. E. 133 (receivership).

The Illinois rule announced in the instant case is likewise applicable in receivership proceedings. *Evans* v. *Illinois Surety Co.*, 319 Ill. 105, 149 N. E. 802.

*Contra: Pringle* v. *Woolworth*, 90 N. Y. 502 (receivership). The federal receivership rule permits continuance of suits in other courts at least where they were pending at the time of the appointment of the receiver. *Riehle* v. *Margolies, supra*. And see *Chicago Title & T. Co.* v. *Fox Theatres Corp., supra*, and *Dickinson* v. *Universal Service Stations*, 100 F. 2d 753, 757, applying the *Riehle* ruling to a suit started in a state court after the receivership. For collection of cases see 96 A. L. R. 485.

of Errors of Connecticut aptly said, "The question is simply one of the admissibility and effect of evidence; and the obligation to receive a judgment in evidence is no more derogatory to the jurisdiction *in rem* than the obligation to receive in evidence a promissory note or other admissible evidence of debt." Beach, Judgment Claims in Receivership Proceedings, 30 Yale L. Journ. 674, 680.

Moreover, we do not have here a situation like that involved in *Pendleton* v. *Russell,* 144 U. S. 640, where it was sought to prove in a New York receivership of a dissolved corporation a judgment obtained in Tennessee after dissolution. The proof was disallowed, dissolution having operated, like death, as an abatement of the suit. No such infirmity appears to be present in the Missouri judgment; and the Illinois Supreme Court did not hold that the appointment of a liquidator for Chicago Lloyds operated as an abatement of the suit. Nor is it sought on any other ground to bring the Missouri judgment within the exception on which *Williams* v. *North Carolina,* 325 U. S. 226, rests, by challenging the jurisdiction of the Missouri court over either the parties or the subject matter. Nor is there any lack of privity between Chicago Lloyds and the Illinois liquidator. Cf. *Ingersoll* v. *Coram,* 211 U. S. 335, 362–364. There is no difference in the cause of action, cf. *United States* v. *California Bridge Co.,* 245 U. S. 337, whether Chicago Lloyds or the liquidator is sued. The Missouri judgment represents a liability for acts committed by Chicago Lloyds, not for those of the liquidator. The claims for which the Illinois assets are being administered are claims against Chicago Lloyds. The Missouri judgment represents one of them. There is no more reason for discharging a liquidator from the responsibility for defending pending actions than there is for relieving a receiver of that task. *Riehle* v. *Margolies, supra.*

*Second.* "A judgment of a court having jurisdiction of the parties and of the subject matter operates as *res judi-*

*cata,* in the absence of fraud or collusion, even if obtained upon a default." *Riehle* v. *Margolies, supra,* p. 225. Such a judgment obtained in a sister State is, with exceptions not relevant here, see *Williams* v. *North Carolina,* 317 U. S. 287, 294–295, entitled to full faith and credit in another State, though the underlying claim would not be enforced in the State of the forum. *Christmas* v. *Russell,* 5 Wall. 290; *Fauntleroy* v. *Lum* 210 U. S. 230; *Roche* v. *McDonald, supra; Titus* v. *Wallick,* 306 U. S. 282, 291. It is no more important that the suit on this underlying claim could not have been maintained in Illinois after the liquidator had been appointed than the fact that a statute of limitations of the State of the forum might have barred it. See *Christmas* v. *Russell, supra; Roche* v. *McDonald, supra.* And the Missouri judgment may not be defeated by virtue of the fact that under other circumstances petitioner might not have been able to obtain it in Missouri or to have received any benefit from it there, as, for example, if a liquidator had been appointed for the debtor in Missouri prior to judgment. The full faith and credit to which a judgment is entitled is the credit which it has in the State from which it is taken, not the credit that under other circumstances and conditions it might have had. Moreover, the question whether a judgment is entitled to full faith and credit does not depend on the presence of reciprocal engagements between the States.

Under Missouri law petitioner's judgment was a final determination of the nature and amount of his claim. See *Pitts* v. *Fugate,* 41 Mo. 405; *Central Trust Co.* v. *D'Arcy,* 238 Mo. 676, 142 S. W. 294; *State ex rel. Robb* v. *Shain,* 347 Mo. 928, 149 S. W. 2d 812. That determination is final and conclusive in all courts. "Because there is a full faith and credit clause a defendant may not a second time challenge the validity of the plaintiff's right which has ripened into a judgment." *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430, 439–440.

For the Full Faith and Credit Clause established "throughout the federal system the salutary principle of the common law that a litigation once pursued to judgment shall be as conclusive of the rights of the parties in every other court as in that where the judgment was rendered." *Id.*, p. 439. And see *Riley* v. *New York Trust Co.*, 315 U. S. 343, 348–349. The nature and amount of petitioner's claim may not, therefore, be challenged or retried in the Illinois proceedings.

As to respondent's contention that the Illinois decree, of which petitioner had notice, should have been given full faith and credit by the Missouri court, only a word need be said. *Roche* v. *McDonald, supra,* pp. 454–455, makes plain that the place to raise that defense was in the Missouri proceedings. And see *Treinies* v. *Sunshine Mining Co.*, 308 U. S. 66, 77. And whatever might have been the ruling on the question, the rights of the parties could have been preserved by a resort to this Court, which is the final arbiter of questions arising under the Full Faith and Credit Clause. *Williams* v. *North Carolina,* 317 U. S. 287, 302. In any event, the Missouri judgment is *res judicata* as to the nature and amount of petitioner's claim as against all defenses which could have been raised. *Roche* v. *McDonald, supra; Milwaukee County* v. *White Co.,* 296 U. S. 268, 275; *Magnolia Petroleum Co.* v. *Hunt, supra,* p. 438.

It is finally suggested that since the Federal Bankruptcy Act provides for exclusive adjudication of claims by the bankruptcy court [3] and excepts insurance companies from the Act (§ 4, 52 Stat. 840, 845, 11 U. S. C. § 22; *Vallely* v. *Northern Fire & Marine Ins. Co.*, 254 U. S. 348), the state liquidators of insolvent insurance companies should have the same control over the determination of claims as the

---

[3] See *In re Paramount Publix Corp.*, 85 F. 2d 42, and cases collected in 106 A. L. R. pp. 1121 *et seq.* Cf. *Robinson* v. *Trustees,* 318 Mass. 121, 60 N. E. 2d 593; *In re Chicago & E. I. Ry. Co.*, 121 F. 2d 785.

bankruptcy court has. This is to argue that by reason of its police power a State may determine the method and manner of proving claims against property which is in its jurisdiction and which is being administered by its courts or administrative agencies. We have no doubt that it may do so except as such procedure collides with the federal Constitution or an Act of Congress. See *Broderick* v. *Rosner*, 294 U. S. 629. But where there is such a collision, the action of a State under its police power must give way by virtue of the Supremacy Clause. Article VI, Clause 2. There is such a collision here. When we look to the general statute which Congress has enacted pursuant to the Full Faith and Credit Clause, we find no exception in case of liquidations of insolvent insurance companies. The command is to give full faith and credit to every judgment of a sister State. And where there is no jurisdictional infirmity, exceptions have rarely, if ever, been read into the constitutional provision or the Act of Congress in cases involving money judgments rendered in civil suits. *Magnolia Petroleum Co.* v. *Hunt, supra,* p. 438; *Williams* v. *North Carolina,* 317 U. S. 287, 294, footnote 6.

The function of the Full Faith and Credit Clause is to resolve controversies where state policies differ. Its need might not be so greatly felt in situations where there was no clash of interests between the States. The argument of convenience in administration is at best only another illustration of how the enforcement of a judgment of one State in another State may run counter to the latter's policies. But the answer given by *Fauntleroy* v. *Lum, supra,* is conclusive. If full faith and credit is not given in that situation, the Clause and the statute fail where their need is the greatest. The argument of convenience, moreover, proves too much. In the first place, it would often be equally appealing to individuals or corporations engaging in multistate activities which might well prefer to defend law suits at home. In the second place, against the

convenience of the administration of assets in Illinois is the hardship on the Missouri creditor if he were forced to drop his Missouri litigation, bring his witnesses to Illinois, and start all over again. But full faith and credit is a more inexorable command; its applicability does not turn on a balance of convenience as between litigants. If this were a situation where Missouri's policy would result in the dismemberment of the Illinois estate so that Illinois creditors would go begging, Illinois would have such a large interest at stake as to prevent it. See *Clark* v. *Williard*, 294 U. S. 211. But, as we have said, proof and allowance of claims are matters distinct from distribution of assets.

The single point of our decision is that the nature and amount of petitioner's claim has been conclusively determined by the Missouri judgment and may not be relitigated in the Illinois proceedings, it not appearing that the Missouri court lacked jurisdiction over either the parties or the subject matter. We do not suggest that petitioner by proving his claim in judgment form can gain a priority which he would not have had if he had to relitigate his claim in Illinois. And, as we have said, there is not involved in this case any rule of distribution which departs from the principle of parity as between Illinois creditors and creditors from other States. See *Clark* v. *Williard*, 294 U. S. 211; *Blake* v. *McClung, supra*.

*Reversed.*

MR. JUSTICE FRANKFURTER, with whom concur MR. JUSTICE BLACK and MR. JUSTICE RUTLEDGE, dissenting.

So far as they are relevant to the question before us, the facts of this case may be briefly stated. As part of its policy in regulating the insurance business, Illinois has formulated a system for liquidating the business of any Illinois insurance concern that falls below requisite standards. To that end it has provided that the title

to the assets of such an Illinois concern should, upon the approval of the Illinois courts, pass to a State officer known as a liquidator. A further provision of the State law defines the procedure for enforcing claims against the assets in Illinois that have thus passed into the liquidator's hands. Claims against such assets must be proved to the satisfaction of the liquidator, subject to appropriate judicial review of his determinations.

It is not in question that the Illinois assets of Chicago Lloyds, an Illinois insurance concern, passed into the ownership of an Illinois liquidator in due conformity with Illinois law. Chicago Lloyds had also done business in Missouri under a Missouri license. While the Illinois assets were being administered by the Illinois liquidator, Morris, a Missouri claimant, pressed against Chicago Lloyds in a Missouri court an action for damages begun while the company was still solvent. Without substitution of the Illinois administrator or appearance by him, Morris obtained a judgment in the Missouri Court against Chicago Lloyds. Apparently, there were no assets in Missouri against which this judgment could go. Thereupon the Missouri judgment-creditor asserted a claim in the distribution of the Illinois assets on the basis of the Missouri judgment. The liquidator declined to recognize the Missouri judgment as such, maintaining that the Missouri creditor must prove his claim on its merits, precisely as did Illinois creditors. The Superior Court of Cook County sustained the liquidator and disallowed the claim based on the Missouri judgment. Disallowance was affirmed by the Supreme Court of Illinois. 391 Ill. 492, 63 N. E. 2d 479. The question now here is whether in disallowing the claim based on the Missouri judgment against Chicago Lloyds, Illinois failed to give full faith and credit to the judgment of a sister State, as required by Article IV, § 1 of the Constitution, and 1 Stat. 122, 2 Stat. 299, 28 U. S. C. § 687.

We have under review a decision of the Illinois Supreme Court regarding the mode of proving claims against Illinois assets of an Illinois insurance company in liquidation in an Illinois court. The issue before us must be determined, however, as though the construction which the Illinois Supreme Court placed upon the Illinois law had been spelt out unambiguously in the legislation itself. And so the real issue is this. May Illinois provide that when an insurance concern to which Illinois has given life can, in the judgment of the State courts, no longer be allowed to conduct the insurance business in Illinois, the State may take over the local assets of such an insurance concern for fair distribution among all who have claims against the defunct concern? May the State, pursuant to such a policy, announce in advance, as a rule of fairness, that all claims not previously reduced to valid judgment, no matter how or where they arose, if they are to be paid out of assets thus administered by the State, must be proven on their merits to the satisfaction of Illinois? And may the State specify that this mode of proof apply also to out-of-State creditors so as to require such creditors to prove the merit of their claims against the Illinois assets in liquidation as though they were Illinois creditors, and preclude them from basing their claims merely on a judgment against the insurance concern, obtained after it had legally ceased to be, and after its Illinois assets had by appropriate proceedings passed into ownership of an Illinois liquidator?

It is safe to say that State regulation of the insurance business is as old and as pervasive as any regulatory power exercised by our States. See, *e. g., Osborn* v. *Ozlin,* 310 U. S. 53; *Hoopeston Co.* v. *Cullen,* 318 U. S. 313. Not even the banking business, of which, after all, insurance is another phase, has been subjected to such continuous and extensive State surveillance. But while banking has increasingly been absorbed by federal regulation, the reverse

has been true as to insurance. Indeed, after a pronouncement by this Court that insurance partakes of commerce between the States, Congress by prompt legislation delegated or relegated the regulation of insurance, with appropriate exceptions, to the diverse laws of the several States. See *Prudential Insurance Co.* v. *Benjamin,* 328 U. S. 408.

We are concerned here solely with the situation presented by a State's exercise of its power over the liquidation of the assets of an insurance company of its own creation. It is important to remember that in this as well as in other connections rights are largely dependent on procedure. It seems, therefore, difficult to believe that when the property of a domestic insurance company within the confines of a State comes into the State's hands for the fair administration of still unliquidated claims against that property, the State may not provide a rule of parity in proving the amount of all claims which are to be paid out of the common pot. We assume, of course, that the procedure prescribed is consistent with the requirements of due process, and not in conflict with overriding federal legislation. It is not suggested that the procedure which Illinois affords does not satisfy these requirements. Standing by itself, such a rule of administration would not be beyond the authority of a State. We must assume it to be Illinois law that the power to pass upon claims against property of a defunct Illinois insurance company is lodged in the liquidator and that such power is not to be foreclosed by a judgment against the defunct concern after title passes to the liquidator. Does the Full Faith and Credit Clause cut the ground from under such a State law as to judgments obtained outside the State after the control of the company and its assets had passed to the State?

Concededly, after the title to the Illinois assets of Chicago Lloyds has passed to the Illinois liquidator, it would

not be open to a citizen of Illinois to obtain in the courts of Illinois, so as to serve as a basis of a claim in Lloyds Illinois assets, such a judgment as Morris, a citizen of Missouri, secured in the Missouri courts. It is thought, however, that because of Article IV, § 1, of the Constitution, Illinois could not deny such a superior right to the Missouri citizen without denying full faith and credit to the Missouri judgment. But the Full Faith and Credit Clause does not imply that a judgment validly procured in one State is automatically enforceable in another, quite regardless of the consequences of such enforcement upon that State's policy in matters peculiarly within its control. *Alaska Packers Assn.* v. *Industrial Comm'n,* 294 U. S. 532, 546. The Full Faith and Credit Clause does not eat up the powers reserved to the States by the Constitution. That clause does not embody an absolutist conception of mechanical applicability. As is so often true of constitutional problems, an accommodation must be struck between different provisions of the Constitution. When rights are asserted in one State on the basis of a judgment procured in another, it frequently becomes necessary, as it does here, to define the duty of the courts of the former State in view of that State's power to regulate its own affairs.

The Full Faith and Credit Clause does not require a State to provide a court for enforcing every valid sister State judgment, even if its courts enforce like judgments in general. *Anglo-Am. Prov. Co.* v. *Davis Prov. Co. No. 1,* 191 U. S. 373. Again, a judgment in one State determining the validity of a will is not a judgment binding on another although it controls issues of succession in the first State. *Robertson* v. *Pickrell,* 109 U. S. 608; *Overby* v. *Gordon,* 177 U. S. 214. Surely, the Full Faith and Credit Clause does not require a State to give an advantage to persons dwelling without, when State policy may justifiably restrict its own citizens to a particular proce-

dure in proving claims against a State fund. But that precisely might be the result if Illinois had to accept at face value judgments obtained outside Illinois against a defunct Illinois insurance concern after the Illinois assets had passed to the Illinois liquidator.

Precedent and policy sustain the right of Illinois to have each claimant prove his fair share to the assets in Illinois by the same procedure. Chicago Lloyds is an Illinois entity doing business in Illinois according to conditions which Illinois had a right to fix for engaging in the insurance business in Illinois. Illinois initiated her policy for liquidating insurance companies in 1925. Lloyds was first authorized to do business in 1928, and thereafter renewed annual authority was required. Missouri gave Lloyds entry in 1932, and later renewed its authority for additional one-year periods. Thus, Illinois gave advance notice that if Chicago Lloyds should fall short of those standards of solvency and safety appropriate for an insurance concern, it will, through a liquidator, seize the Illinois assets of Chicago Lloyds for the protection of all claimants as to the merits of their claims. It warned the world that when such a situation arose claims against assets in Illinois must be proven in the manner which Illinois has here required. The authorization to do Lloyds business in Illinois created against the Lloyds assets in Illinois a sort of equitable lien, to speak freely but not too loosely, to become effective at insolvency and liquidation. To require that all claims against the estate in Illinois liquidation should be established on their merits in the Illinois proceedings may well have been deemed by Illinois the only way to protect the estate against foreign judgments which the Illinois liquidator might have no adequate means of contesting. It is irrelevant whether in this or in any other particular situation the liquidator could have contested a suit outside of Illinois. Certainly nothing can turn on whether the Illinois liquidator appears

specially in the foreign litigation to assert the liquidation of the company and the vesting of title to its assets in the State of Illinois. We are concerned here with the respect that is to be accorded to a judgment secured against the company by appropriate procedure in another State. Either such a judgment, obtained after the title to the Illinois assets vested in the Illinois liquidator, could be proven for the face value of the judgment, or it could not. The respect to be accorded such a judgment must turn on the control which Illinois may constitutionally exercise in the administration of Illinois property. Relevant to that issue of power is not whether in a particular suit the liquidator could have protected himself by entering as a litigant in the suit in another State. What is relevant is whether Illinois may deem that its liquidator might not be able adequately to defend the estate in liquidation in every State in which a suit might be pressed to judgment. What is relevant also is whether in such liquidation proceedings Illinois can refuse to accept at face value a judgment against an Illinois insurance company obtained after that company had ceased to exist, a judgment which the creditor would enforce against assets which passed to the State before the judgment was obtained.

Due regard for the relations of the States to one another, expressed by appropriate respect by one for the judicial proceedings of another, does not require that the provisions carefully established by Illinois for the proper safeguarding of these Illinois assets should be disturbed by judgments secured outside of Illinois after the very contingency for which Illinois provided had become a reality. It would be unfair thus to subordinate the primary and predominant interest of Illinois simply because the Illinois entity was allowed to enter Missouri. Missouri, like every other State, in admitting Chicago Lloyds had notice of the congenital limitations, so far as Illinois assets were concerned, under which Chicago Lloyds came

into being. And so, when Missouri admitted Chicago Lloyds, it admitted an Illinois insurance concern with full knowledge of what Illinois would exact, in case trouble arose, to the extent of assets within the control of Illinois. Of course Missouri has a right to provide for its methods of administration, in case of default, as to Missouri assets. But we are not here concerned with an attempt to enforce the Missouri judgment against Missouri assets. We put to one side whether Illinois law could pass title to Missouri assets to the Illinois liquidator. See *Clark v. Williard,* 294 U. S. 211. We do say that it is not within the power of any other State, by admitting the Illinois entity, to effect discrimination against the citizens of Illinois in the distribution of Illinois assets that had passed to the State, for the fair distribution of which Illinois had formulated an appropriate method of proof.

This analysis assumes a heavier burden than the case makes necessary. It is not merely that Missouri had notice of the conditions under which Chicago Lloyds was doing business in Illinois and thereby charged all its citizens with knowledge of the limited power of Missouri to affect Illinois assets upon liquidation. The Missouri claimant had actual notice that the Illinois assets had passed to the Illinois liquidator and that he was at liberty to come into the Illinois proceedings to prove his claim. The Missouri claimant had in fact come into the Illinois proceedings and filed his claim with the Illinois liquidator before he pressed his Missouri suit to judgment. It is a strong thing to say that Illinois could not say that under these circumstances the Missouri claimant must prove his claim the way every claimant in Illinois was bound to prove his. Surely the Constitution of the United States does not bar legislation by Illinois which provides a fair sifting process for determining the amount of claims against Illinois assets of an Illinois insurance company in liquidation in an Illinois court so as to secure equality of

treatment for all who assert claims against such a fund. The Full Faith and Credit Clause does not impose upon Illinois a duty to allow the face value of a judgment against the insurance company secured in Missouri after the company's assets had passed into the possession of the Illinois court, in a proceeding to which the Illinois liquidator was not a party and could not have been made one.

The precise relation of the liquidator's legal position to the Missouri judgment, on the basis of which Morris asserts a claim against the liquidator's assets, reinforces the more general considerations. Morris had no judgment against the company when by Illinois law title to Lloyds' assets passed to the liquidator. The mere institution of the Missouri suit gave Morris no greater right to the Illinois assets of Lloyds than he had before the action was begun. By the time he obtained his judgment in Missouri, the company no longer had title to any assets in Illinois to which the judgment might attach. By unassailable Illinois law, Lloyds' assets had passed to the liquidator. These assets could be reached only by valid judgment against him. In this respect, the law of Illinois controlling the liquidation of Lloyds, as authoritatively given us by the Supreme Court of Illinois, is decisively different from what this Court found to be the law of Illinois regarding the Illinois surety company in process of dissolution in *Ewen* v. *American Fidelity Company*, 261 U. S. 322. The liquidator was not a party to the Missouri action; he had not been served; he had not appeared; he expressly denied the right of Lloyds to represent and bind the Illinois liquidation estate. The authority with which Illinois clothed its liquidator put him under a duty to contest claims which the Company might not have deemed itself under duty to contest, while on the other hand it enabled him to recognize, as the Company might not have recognized, the merit of claims otherwise than by judicial command. The liquidator, as trustee for the creditors of

the extinct Illinois company, represented interests that were not the same as those represented by the extinct company when it conducted its own business. In short, the Illinois liquidator was thus a stranger to the Missouri judgment and it cannot be invoked against him in Illinois. See *United States* v. *California Bridge Co.*, 245 U. S. 337; *Kersh Lake Dist.* v. *Johnson*, 309 U. S. 485. Indeed, to subject the assets of the Illinois liquidator to the claim of a judgment obtained against Lloyds in Missouri subsequent to the passage of those assets to the liquidator may well raise constitutional questions. *Riley* v. *New York Trust Co.*, 315 U. S. 343; *cf.* Restatement, Conflict of Laws, § 450, comment *d*.

It is suggested that out-of-State creditors should be saved the burden of proving their claims in Illinois. Of course that is a proper consideration, and it would be controlling, where a creditor has obtained judgment, if there were no countervailing considerations. Against the claim of out-of-State creditors must be set not merely the interests of Illinois creditors, but also the importance of a unified liquidation administration, the burden to the liquidator of defending suits anywhere in the United States, and the resulting hazards to a fair distribution of the estate. To require the face value of the Missouri judgment of the Missouri claimant to determine his share out of the Illinois fund might, of course, dilute the share in the Illinois assets that can go to legitimate Illinois claimants. Considering the primary and predominant relation of Illinois in the adjustment of these conflicting interests, considering, that is, that we are dealing with a creature of Illinois and the property of that creature within her bounds, neither the demands of fairness nor anything in the Constitution requires that the interests of the out-of-State creditors should control the Constitutional issue. The resolution of this conflict so that the out-of-State creditor must take his place with the Illinois creditors is an-

other instance of a price to be paid for our federalism, and in this instance it is a very small price. If the situation calls for correction by a uniform regulation, Congress has the power to deal with the matter. Or the States might do so through the various devices for securing uniformity of State legislation. Illinois, in fact, has made overtures to its sister States in this regard. It has adopted the Uniform Reciprocal Liquidation Act as proposed by the Commissioners on Uniform State Laws. By this Act claims against insolvent Illinois insurance companies may be proved in ancillary proceedings in any "reciprocal state." Ill. Laws 1941, pp. 832–37, replacing Laws 1937, pp. 788–90, Smith-Hurd Ann. Stat. c. 73, § 833.3. That Missouri has not seen fit to protect the interests of Missouri creditors by becoming a "reciprocal state" is not the fault of Illinois.

A final word. It is suggested that this Court is merely deciding the finality of the Missouri judgment in Illinois, without any regard to its provability on a parity with the claims of Illinois creditors in the distribution of Illinois assets. But we are not merely passing on the abstract status of the Missouri judgment. The only issue that has ever been in this case is the right of the Missouri claimant to participate in the Illinois assets on the basis of the face value of his judgment. Such was the claim made by the creditor; such was the claim disallowed by the liquidator; such was the claim rejected by the lower court, and such was the disallowance affirmed by the Supreme Court of Illinois. It has never been questioned that the thrust of the case was the opportunity of the Missouri judgment-creditor-claimant to compete with the Illinois claimants in the distribution of the estate not on the basis of the merits of his claim, but on the amount fixed by the Missouri judgment. Neither by any of the courts nor by any of the parties was any suggestion made that under Illinois law the Illinois creditors have priority to exhaust the

Illinois assets. What was before that court and what is before this Court is whether a Missouri claimant may share in the distribution of a common fund not on the basis of a claim established according to a uniform procedure but on the basis of a judgment secured in Missouri subsequent to the passing of that fund to the Illinois liquidator.

This is not to say that the Missouri judgment is invalid. Whether recovery may be based on this judgment in Missouri, or in any other State except Illinois, or even in Illinois should the assets go out of the State's hands and return to a reanimated Chicago Lloyds, are questions that do not now call for consideration.

The judgment should be affirmed.