**CENTRAL W. RENTAL CO., d/b/a CTE Leasing Corp.**

**v.**

**HORIZON LEASING, A DIVISION OF HORIZON FINANCIAL, F.A.**

Civ. A. No. 90–3511.

United States District Court, E.D. Pennsylvania.

June 11, 1990.

Donald P. Tarosky, Greensburg, Pa., Larry A. Silverman, Pittsburgh, Pa., for plaintiff.

David L. Braverman, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BUCKWALTER, Emergency Judge.*

On May 25, 1990, plaintiff appeared before this court seeking a Temporary Restraining Order ("TRO"). The defendant, the F.D.I.C., exclusive manager of the Resolution Trust Corporation, as conservator for Horizon Financial, F.A. ("Horizon") opposed the granting of the TRO on essentially two grounds, which form the issues to be decided.

They are:

1. Is this court statutorily prohibited from granting injunctive relief by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") § 212 (12 U.S.C. § 1821(j), as amended)?

2. Has plaintiff met the well established standards so that it is entitled its requested relief?

By way of background, on May 1, 1990, plaintiff filed a complaint in equity and action for declaratory judgment in the Court of Common Pleas of Westmoreland County. Prompted by a letter from defendant dated May 11, 1990 alleging plaintiff was in default under agreements with Horizon and demanding immediate payment on certain notes in the aggregate amount of $1,936,597.15, plaintiff filed a petition for preliminary or special injunction in the court aforesaid on May 18, 1990. Thereafter, the Westmoreland County Court of Common Pleas issued an ex parte order enjoining defendant from pursuing remedies it might have arising from the alleged default of plaintiff. Immediately upon receiving notice of this order, defendant removed the action to this court.

When it appeared that this matter could not be resolved on May 25, 1990, a hearing was set for May 29, 1990 at which time the plaintiff presented the testimony of one witness in support of its request for a TRO. From that testimony, it appears that plaintiff is in the car leasing business and may have as many as 2,500 vehicles under lease. It further appears that plaintiff and Horizon were parties to a Line of Credit and Security Agreement in connection with which plaintiff executed certain promissory notes. The security agreement provided, among other things, that the collateral for the agreement consisted of all leases of goods, which goods were motor vehicles. At an uncertain point in time, a disagreement arose as to the interpretation of plaintiff's obligation under the leases. The disagreement reached the point where, simply stated, the plaintiff refused to accept defendant's allegation that it was in default and concluded that the only way the disagreement could be resolved was by litigation. (See page 104 of the notes of testimony.) The sum and substance of the disagreement was whether plaintiff was obligated to pay the residual value under the Schedule of Leased Property Agreement if

---

* Emergency Judge for the Honorable Clifford Scott Green.

the lease was terminated before its full term.

Since defendant has taken the position that plaintiff must pay the residual value when the lease is terminated, regardless if the term has been fully completed or otherwise, defendant has claimed the plaintiff is in default and that therefore the notes signed in connection with the Security Agreement by the plaintiff are now due and owing. For plaintiff, this comes at a very bad time since it is in the process of buying another car agency. According to plaintiff, a confessed judgment against it at this time will prevent it from getting the necessary financing to buy the agency. This according to the testimony is the nature of the irreparable harm plaintiff will suffer if a TRO is not granted.

With the above brief background, the two principal issues will now be dealt with.

■ First, this court is not statutorily prohibited from granting injunctive relief based upon the following analysis. In seeking immunity from injunctive relief, defendant (collectively, the "FDIC"), invokes the Financial Institutions Recovery and Enforcement Act of 1989 ("FIRREA") § 212 (12 U.S.C. § 1821(j), as amended) which provides the following:

Except as provided in this section, no court make take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

In accordance with 12 U.S.C. § 1821(d)(2)(B), defendant FDIC maintains that the following powers and functions vest in the FDIC as conservator or receiver:

(i) take over the assets of and operate the insured depository institution with all the powers of the members of shareholders, the directors, and the officers of the institution and conduct all business of the institution;

(ii) collect all obligations and money due the institution;

(iii) perform all functions of the institution which is consistent with the appointment as conservator or receiver; and

(iv) preserve and conserve the assets and property of such institution.

House Report No. 101–54(I) provides a section-by-section analysis of the FIRREA. Section 212(5) defines the FDIC's authorities and duties as conservator or receiver. The authorities essentially parallel those exercised by the Federal Savings and Loan Insurance Corporation ("FSLIC") and are designed to give the FDIC power to take all actions necessary to resolve the problems posed by a financial institution in default. H.R.Rep. No. 101–54, 101st Cong., 1st Sess., *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 126, 130.

Subsection (*l*), which parallels 12 U.S.C. § 1821(j), provides the following:

Subsection (*l*) authorizes the FDIC to make rules and regulations for the conduct of conservatorships and receiverships, and enables the FDIC to set up a variety of administrative procedures to resolve contested claims, including alternative dispute resolution systems. The agency's determination cannot be appealed but a claimant, after exhaustion of administrative remedies, may choose to present its claim de novo in the District Court or to use an administrative review procedure established by the agency. A notice of disallowance becomes final unless the claimant files an objection within 30 days of the mailing of such notice. Any suit must be brought by the claimant within 60 days after the denial of the claim.

Subsection (*l*) also requires the FDIC to establish an expedited procedure for claimants with validly perfected security interests.

Finally, the subsection bars courts, to the same extent as the Home Owners' Loan Act does now under existing law, from restraining or .affecting the exercise of the powers or functions of the FDIC as conservator or receiver, except at the request of the Board of Directors.

FDIC relies upon 12 U.S.C. § 1821(j) in order to preserve its powers and functions

**1112**

as conservator or receiver. Similarly, FSLIC relies upon a parallel provision, 12 U.S.C. § 1464(d)(6)(C), in order to preserve its powers and functions as conservator or receiver:

> Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the Board, restrain or affect the exercise of powers or functions of a conservator or receiver.

In *Morrison–Knudsen Co. v. CHG International, Inc.*, 811 F.2d 1209 (9th Cir. 1987), the court considered the question of whether the FSLIC had exclusive jurisdiction to adjudicate claims against the assets of an insolvent thrift association placed in a FSLIC receivership. The court held that FSLIC had no power to adjudicate creditor claims.

In its assertion of adjudicatory power, FSLIC relied upon 12 U.S.C. § 1464(d)(6)(C):

> Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the Board, restrain or affect the exercise of powers or functions of a conservator or receiver.

FSLIC asserted that judicial adjudication of creditors' claims would "restrain or affect" the exercise of its receivership powers in violation of the statutory command. *Morrison–Knudsen*, 811 F.2d at 1210.

In rejecting FSLIC's assertion, the court reasoned that 12 U.S.C. § 1464(d)(6)(C) does not add to FSLIC's receivership powers but simply prohibits courts from interfering with those powers, which FSLIC must derive from other statutory sources. Thus, the essential question under section 1464(d)(6)(C) is whether FSLIC's receivership "powers or functions" include adjudication of creditor claims. The court added that in the absence of statutory language or legislative history indicating a congressional intent to confer adjudicatory power upon FSLIC in its receivership capacity, the agency may not use section 1464(d)(6)(C) to achieve that result. *Morrison–Knudsen*, 811 F.2d at 1210.

The court further stated that a receiver's ordinary functions do not include adjudication. Judicial adjudication does not restrain or affect a receivership but simply determines the existence and amount of claims that a receiver is to honor in its eventual distribution of assets. *Morrison–Knudsen Co. v. CHG International, Inc.*, 811 F.2d 1209 (9th Cir.1987), *citing Morris v. Jones*, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1947) (The establishment of the existence and amount of a claim against the debtor in no way disturbs the possession of the liquidation court, in no way affects title to the property, and does not necessarily involve a determination of what priority the claim should have.").

*Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989) presented the question of whether Congress granted the FSLIC, as receiver, the exclusive authority to adjudicate the state law claims asserted against a failed savings and loan association. The court held that Congress did not grant FSLIC such power and that the creditors of a failed savings and loan association are entitled to de novo consideration of their claims in court. *Id.*

Specifically the court held that judicial resolution of petitioner's state law claims would not "restrain or affect" FSLIC's exercise of its receivership functions in violation of § 1464(d)(6)(C), which states that, "[e]xcept as otherwise provided in this subsection, no court may take any action for or toward the removal of any ... receiver, or, except at the instance of the Board, restrain or affect the exercise of powers or functions of a ... receiver." This language does not add adjudication of creditors claims to FSLIC's receivership powers, but simply prohibits courts from restraining or affecting FSLIC's exercise of those receivership "powers and functions" that have been granted by other statutory sources, none of which confer adjudicatory power. *Id.*

The court reasoned that the "restrain or affect" language should not be read to

preclude de novo court adjudication of the validity of creditors' claims against savings and loan in receivership. This is reinforced by the fact that at the time of the statute's enactment, it was well established at common law that suits establishing the existence or amount of a claim against an insolvent debtor did not interfere with or restrain the receiver's possession of the insolvent's assets or its exclusive control over the distribution of assets to satisfy claims. *Morris v. Jones,* 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1947).

The court further held that Congress clearly envisaged that the courts would have subject matter jurisdiction over creditor suits against FSLIC as receiver which is demonstrated by several other statutory provisions, including those allowing FSLIC to sue and be sued in any court, § 1725(c)(4). Most significantly, § 1730(k)(1) provides an explicit grant of subject matter jurisdiction that clearly contemplates creditors' state court suits against FSLIC as receiver for state-chartered associations. There is no indication that Congress intended to treat federally chartered associations differently in this respect. *Coit Independent Joint Venture v. FSLIC,* 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989).

The court reasoned that Congress established the FSLIC in 1934 and provided that FSLIC could "sue and be sued, complain and defend, in any court of law or equity, State or Federal." NHA, § 402(c)(4), 48 Stat. 1256, now codified, as amended, 12 U.S.C. § 1725(c)(4). Most significantly, in 1966, in the very statute that contained the "restrain or affect" language of 12 U.S.C. § 1464(d)(6)(C), Congress provided an explicit grant of subject matter jurisdiction to the courts that clearly envisage suits by creditors against FSLIC as receiver:

> "Notwithstanding any other provision of law, … (B) any civil action, suit or proceeding to which [FSLIC] shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and (C) [FSLIC] may, without bond or security,

remove any such action, suit, or proceeding from a State court to the United States district court …: Provided, That any action, suit, or proceeding to which [FSLIC] is a party in its capacity as conservator, receiver, or other legal custodian of an insured State-chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law shall not be deemed to arise under the laws of the United States." FISA, 80 Stat. 1042, 12 U.S.C. § 1730(k)(1) (emphasis added).

The court reasoned that the proviso clause sets out the types of suits Congress expected FSLIC to defend against in state courts, including suits by creditors against FSLIC as receiver for state-chartered savings and loan associations. Moreover, the court found no indication that Congress intended to treat state-chartered and federally chartered associations differently in this respect. See e.g. 12 U.S.C. § 1729(c)(1)(A) (granting FSLIC the "same powers and duties" as receiver for defaulted state institutions as it has with respect to federal savings and loan associations). In sum, the court concluded that Congress clearly envisaged that the courts would have subject matter jurisdiction over creditor suits against FSLIC. *Coit Independent Joint Venture v. FSLIC,* 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989). By analogy, we believe plaintiff may pursue its present suit and if warranted by the law and facts, this court may enjoin the defendant.

■ With regard to the second issue, we do not believe that plaintiff has established its entitlement to a temporary restraining order. Our analysis of that issue is considerably less complex than the one immediately preceding. Suffice it to say that the present state of the record consisting of the notes of testimony and the pleadings filed do not establish that the plaintiff has a reasonable probability of success on the merits. It may well be that future discovery and additional testimony could support plaintiff's interpretation of the con-

tract. As it stands now, however, we have a plaintiff who testified that he just glanced over the terms of the contract he signed and now wants this court to give it an interpretation that does not necessarily appear from the reading of it.

Secondly, the testimony was not convincing that the harm plaintiff will suffer if a TRO is not issued will be irreparable. Again, it may be that plaintiff can through discovery and subsequent testimony at another hearing produce evidence that would substantiate his claim to irreparable harm. For example, it is not at all clear that plaintiff cannot under any circumstances secure financing for his new business venture if defendant pursues its remedies under the alleged default.

Finally, a question has arisen regarding the temporary injunction entered by the Court of Common Pleas of Westmoreland County. Under the provisions of 28 U.S.C. § 1450, such injunction will remain in full force and effect until dissolved or modified by the district court. By the above discussion, we feel that that order should be dissolved and do so in our order which we enter as follows:

### ORDER

AND NOW, this 11th day of June, 1990, plaintiff's motion for temporary restraining order is DENIED, and the order of the Court of Common Pleas of Westmoreland County, Pennsylvania indexed in that court to number 2624 of 1990 and dated May 18, 1990 is DISSOLVED.