The **STUYVESANT INSURANCE COMPANY**, Plaintiff,

v.

**DEAN CONSTRUCTION COMPANY,** Inc., the New Atlantic Beach Hotel and Cabana Club, Inc., Helen T. Johnson, as Administratrix of the Estate of Alma W. Taylor, Deceased, Hilda Berg, Sidney Berg, Frank L. Newburger, Jr., Dorothy E. Newburger and Audrey R. Kelly, Commissioner of Insurance of the Commonwealth of Pennsylvania, Defendants.

**No. 65 Civ. 3385.**

United States District Court
S. D. New York.
May 16, 1966.

Ticktin & Bleich, New York City, for plaintiff, David Ticktin, New York City, of counsel.

Leo Fixler, New York City, for defendants Dean Const. Co., Inc. and the New Atlantic Beach Hotel and Cabana Club, Inc.

Jerome J. Verlin, Philadelphia, Pa., for defendant Helen T. Johnson, as Administratrix of the Estate of Alma W. Taylor, decd., Robert E. Quirk, New York City, of counsel.

Rodwin, Rodwin & Gelin, New York City, for Audrey R. Kelly, Comr. of Insurance of Commonwealth of Pennsylvania, Harry Rodwin, New York City, of counsel.

FREDERICK VAN PELT BRYAN, District Judge:

This is a statutory interpleader action brought under 28 U.S.C. § 1335.

Plaintiff Stuyvesant Insurance Company (Stuyvesant), a New York insurance company with its principal place of business here, is the obligor on a $65,000 bond securing payment of a judgment against Empire Mutual Insurance Corporation (Empire), a Pennsylvania insurance corporation. As collateral for the bond Stuyvesant holds $65,000 cash deposited by Empire. Empire has now been dissolved for insolvency under Pennsylvania court order, and defendant Audrey Kelly, the Pennsylvania Insurance Commissioner (the Commissioner), is liquidating Empire's assets for the benefit of creditors pursuant to applicable Pennsylvania law.

The judgment against Empire was entered in the New York Supreme Court and is in favor of defendants Dean Construction Company and New Atlantic Beach Hotel and Cabana Club, both of which are New York corporations with principal places of business here. These two defendants are united in interest, and will be referred to as Dean-Atlantic. They have commenced an action against plaintiff Stuyvesant on the bond securing the judgment in the New York Supreme Court.

The individual defendants Helen Johnson, Hilda and Sidney Berg, and Frank and Dorothy Newburger, all citizens and residents of Pennsylvania, are creditors of Empire who have levied attachments aggregating $15,000 against Stuyvesant. They claim an interest in the collateral.

Defendant Commissioner as statutory liquidator of Empire's assets has also laid claim to the collateral held by Stuyvesant.

Faced with these conflicting demands Stuyvesant filed its interpleader complaint admitting liability on the bond and alleging that it is entitled to reimburse itself from the collateral in its possession to the extent of any payments made in satisfaction of such liability. To satisfy its obligations it has deposited $65,000 in the registry of the court.

Defendants Dean-Atlantic, the Commissioner and Johnson have appeared and answered. Dean-Atlantic denies that there is interpleader jurisdiction but asserts its right to payment of $65,000 with interest under the bond. Defendant Commissioner does not contest interpleader jurisdiction but asserts a cross-claim against Dean-Atlantic alleging that the Dean-Atlantic judgment is void, that the bond continues in effect and that as liquidator of Empire she is entitled to the collateral. The answer of defendant Johnson asserts a claim of $11,000 against Stuyvesant, presumably against the collateral, and otherwise denies any knowledge or information sufficient to form a belief as to the allegations of the complaint. Defendants Hilda and Sidney Berg and Frank and Dorothy Newburger have defaulted.

Stuyvesant has now moved for summary judgment exonerating it from any

liability beyond the $65,000 paid into court and for an injunction against any other actions or proceedings arising out of the bond and collateral. Defendants Dean-Atlantic have moved against Stuyvesant to dismiss the action for want of interpleader jurisdiction, or in the alternative, for summary judgment awarding them the fund deposited by Stuyvesant with the court. They have also moved to dismiss the cross-claim of the defendant Commissioner.

## Facts

The rather complicated facts are virtually undisputed. On January 15, 1963, Dean-Atlantic commenced suit in New York Supreme Court to recover for storm damage on insurance policies issued by Empire and others. As a condition to defense of the action, Empire was required by § 59–a of the New York Insurance Law, McKinney's Consol. Laws, c. 28, to furnish a bond "in an amount * * sufficient * * * to secure the payment of any final judgment." Accordingly, on July 30, 1963, pursuant to court order Stuyvesant issued its bond in the amount of $65,000, and received cash collateral in the same amount from Empire.[1]

While the action by Dean-Atlantic was pending in New York, on January 31, 1964 the Court of Common Pleas of Dauphin County, Pennsylvania, ordered that Empire be dissolved by reason of insolvency. The order vested title to Empire's assets and property in the defendant Commissioner and directed liquidation for the benefit of creditors in accordance with the applicable Pennsyl-vania law.[2] The order also provided "that all persons are hereby enjoined and restrained from instituting or prosecuting any action at law or in equity or any attachment or execution against [Empire]."

The Commissioner thereupon assumed the defense on behalf of Empire in the New York action by Dean-Atlantic, and retained Empire's attorney to represent her. She then moved for summary judgment on the ground that the suit had abated as a result of the dissolution of Empire which was directed by the Pennsylvania court. Dean-Atlantic crossmoved to strike the defense of abatement.

On April 14, 1964, Empire's motion for abatement was denied by the New York Supreme Court and the cross-motion to strike the defense was granted. Dean Constr. Co. v. Agricultural Ins. Co., 42 Misc.2d 834, 249 N.Y.S.2d 247 (Sup.Ct. 1964). On November 9, 1964, the Appellate Division, Second Department, affirmed "[b]ecause Empire is not, under the Uniform Act [Uniform Insurers Liquidation Act], domiciled in a reciprocal state [and thus] the Pennsylvania Insurance Commissioner is not vested by operation of law with title to Empire's New York property; nor, for that reason, may he sue to recover Empire's assets * *." 22 A.D.2d 82, 84–85, 254 N.Y.S.2d 196, 199 (2d Dep't 1964).

A notice of appeal from this decision to the New York Court of Appeals was filed on behalf of the Commissioner. Instead of prosecuting the appeal, however, the Commissioner entered into a stipulation of settlement with Dean-Atlantic on November 25, 1964.[3] Under the terms

---

1. The pertinent terms of the bond read as follows:
 "The Stuyvesant Insurance Company * * * does hereby undertake that the Defendant, Empire Mutual Insurance Company, * * * will pay to the Dean Construction Company, Inc., et al., the Plaintiff, any final judgment which may be rendered against the Defendant * * * in such action not exceeding the sum of Sixty Five Thousand Dollars ($65,000.-00)."

2. 40 Pa.Stat.Ann. § 206 (Purdon's 1954).

3. The stipulation reads as follows:
 "It is hereby stipulated and agreed by and between the attorney for the plaintiffs and the attorney for the defendant, Empire Mutual Insurance Company, that the cause of action against the said Empire Mutual Insurance Company be and the same hereby is settled and discontinued.
 "It is further stipulated and agreed that plaintiffs be and are hereby authorized to enter a Judgment against the Empire Mutual Insurance Company for the sum of $65,000.00 without interest or costs and that an Order, if required, may be

of the settlement judgment was to be entered against Empire in favor of Dean-Atlantic for the sum of $65,000, the face amount of the Stuyvesant bond, on Dean-Atlantic's damage claim of $120,000. On December 1, 1964, it was separately agreed that Dean-Atlantic would retain $50,000 of the sum to be received on the Stuyvesant bond in payment of the judgment and the remaining $15,000 would be paid to the Commissioner provided no further litigation ensued.[4] On December 2, 1964, the stipulation of settlement of November 25 was confirmed by court order and judgment on consent was entered accordingly against Empire in the amount of $65,000.

However, the Commissioner subsequently discharged the attorney who had been representing her and substituted new attorneys. On January 12, 1965, they moved in the Supreme Court, Nassau County, to vacate the stipulation of settlement on the grounds, among others, that it allegedly (1) contravened the full faith and credit clause of the United States Constitution by ignoring provisions of the Pennsylvania decree providing for the liquidation of Empire; (2) violated the Fourteenth Amendment by granting a discriminatory preference to Dean-Atlantic at the expense of Empire's other creditors; (3) was entered into by an attorney who lacked authority to act on her behalf.

Justice Brennan who heard the motion concluded that since "the settlement was

entered into *after* the Appellate Division Second Department had rendered its unanimous decision striking the vitally important affirmative defense of abatement" which had been interposed on the same theories urged before him, the settlement necessarily reflected an acceptance by the then attorney for the Commissioner of the law as decided by that court. He held, therefore, that the first and second grounds urged were not open to the Commissioner and that the only question was whether the attorney who represented the Commissioner was authorized to enter into the settlement.

Since there were issues of fact on that question, a hearing was held on February 10, 1965. On March 30 Justice Brennan denied the motion to vacate the settlement, finding that the attorney then representing the Commissioner had been authorized to enter into the settlement. He found further that the possibility of an appeal to the Court of Appeals from the determination of the Appellate Division was simply one of the elements entering into the settlement negotiations.

The Second Department affirmed Justice Brennan's decision without opinion. And on October 28, 1965, the Court of Appeals refused an appeal on the ground that the Second Department's order of affirmance was not appealable under N.Y.C.P.L.R. §§ 5601, 5602, and 5611. This action was then commenced and two days later Dean-Atlantic initiated a suit against Stuyvesant on the bond in the New York Supreme Court.

entered on this Stipulation without further notice."

4. The letter which was sent by the attorney for Dean-Atlantic and "accepted and approved" by the attorney for the Commissioner reads in pertinent part:

"In order to avoid litigation in connection with the enforcement of the bond of Stuyvesant and to resolve further issues with the Insurance Commissioner of the Commonwealth of Pennsylvania as Liquidator of Empire Mutual Insurance Company, my clients are willing to authorize me to execute a Satisfaction of Judgment provided they receive $50,000.00 plus their disbursements and costs allowed in connection with the appeal.

"If, however, my clients are obliged to litigate the matter, then of course, this proposal is withdrawn and they shall expect to be paid the sum of $50,000.00 plus costs, disbursements and interest and a reasonable allowance for counsel fees.

"The purpose of the authorization to accept $50,000.00 for the Judgment of $65,000.00 is to avoid all further litigation so that you can well understand the need for a reservation of rights in the event further litigation ensues.

"If this is consistent with your authority, please indicate your approval of this understanding below on the duplicate original of this letter."

### 1. *Interpleader jurisdiction*

Defendants Dean-Atlantic have moved to dismiss the action on the ground that this court lacks jurisdiction under 28 U.S.C. § 1335 because the case at bar does not involve "[t]wo or more adverse claimants, of diverse citizenship." Dean-Atlantic contend that interpleader jurisdiction does not lie here because the $65,000 deposited in court by Stuyvesant is not—and could not be—subject to the claims of any of the other defendants.

It is true, as Dean-Atlantic contends, that Stuyvesant under its bond is obligated to pay to them any final judgment recovered against Empire up to $65,000 and that a judgment for that sum has been entered. Nevertheless, there is no question that the Commissioner has claimed the collateral and such claim necessarily involves an interest in the bond which the collateral secures. The Commissioner apparently takes the position that if payment is compelled on the bond Stuyvesant will be entitled to apply the collateral as reimbursement for the monies it has paid out under the bond. In such event the Commissioner fears she will lose any right to recover the collateral as part of the assets of Empire available for pro rata distribution to Empire's creditors, including Dean-Atlantic.[5]

Though a mere naked claim without any color of support does not justify interpleader, it cannot be said here that the Commissioner's claim is "so utterly baseless that the stakeholder's [Stuyvesant's] assertion of multiple claims is not made in good faith." 2 Barron & Holtzoff, Federal Practice § 551, at 230 (Wright ed. 1961). Interpleader jurisdiction is not dependent upon the merits of the respective claims. See, e. g., New York Life Ins. Co. v. Welch, 111 U.S.App.D.C. 376, 297 F.2d 787 (1961); Bierman v. Marcus, 246 F. 2d 200 (3 Cir. 1957); John Hancock Mut. Life Ins. Co. v. Kraft, 200 F.2d 952 (2 Cir. 1953); Hunter v. Federal Life Ins. Co., 111 F.2d 551, 556 (8 Cir. 1940). Under the circumstances Stuyvesant need not jeopardize its interests by hazarding a determination as to the relative merits of the competing claims. See John Hancock Mut. Ins. Co. v. Kraft, supra. As was said in Metropolitan Life Ins. Co. v. Segaritis, 20 F.Supp. 739, 741 (E.D.Pa. 1937):

> "the purpose of an interpleader is as much to protect a stakeholder from the expense of double litigation, * * * as it is to protect him from the risk of double liability. * * * Nor does the mere fact that a contractual relationship exists between the plaintiff and one of the defendants, under which the fund is required to be paid to such defendant, defeat the right to interpleader."

Accordingly, I conclude here that under § 1335 Dean-Atlantic and the Commissioner have interposed "adverse" claims with respect to the $65,000 which has been paid into court.[6] There are plainly adverse parties each claiming to

---

5. On October 19, 1965 the Commissioner wrote to Stuyvesant, stating: "It appears that the attorney for the plaintiff in the action of Dean Construction Company vs. Empire Mutual Insurance Company has made demand upon your Company for the payment of the sum of $65,000.00 * * *. This letter is to inform you that the Insurance Commissioner of the Commonwealth of Pennsylvania has an interest in this fund * * *."

Several other letters from the Commissioner making substantially the same demands have been served upon Stuyvesant. Furthermore, in her answer to the complaint the Commissioner alleges that she "claims an interest in the continuance in full force and effect of said bond of Stuyvesant and in the collateral security deposit of $65,000, title to which is vested in the [Commissioner] as aforesaid."

6. The interpleader statute confers jurisdiction upon this court so long as "[t]wo or more adverse claimants, of diverse citizenship * * * may claim to be entitled to * * * any one or more of the benefits arising by virtue of any * * * bond * * * or other instrument." (Emphasis added.) The draftsman of the enactment was of the opinion that this provision would cover a situation where "one claimant is demanding a different benefit from the other. Thus one may be seeking the

be entitled to benefits arising by virtue of the bond and the accompanying collateral. These conflicting claims of the competing parties with respect to the bond and the collateral are without question "inextricably interrelated," so that the flexible and liberal interpleader device can properly be called into play. Royal School Labs., Inc. v. Town of Watertown, 2 Cir., 358 F.2d 813, 815 (March 14, 1966) (Friendly, J.).

■■ The diversity requirements of § 1335 are clearly satisfied. The citizenship of the competing claimants is the operative fact for jurisdictional purposes. See Treines v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939). Here Dean-Atlantic, New York citizens united in interest, are opposing the claims to the res of the Commissioner and Johnson, who are Pennsylvania citizens. It is immaterial that diversity does not exist within the competing groups. See, e. g., Pure Oil Co. v. Ross, 170 F.2d 651 (7 Cir. 1948); Firemen's Funds Ins. Co. v. Irwin, 82 F.Supp. 180 (N.D.Ga. 1948).

■ Finally, the possibility that Stuyvesant may have incurred a so-called independent liability to Dean-Atlantic under the bond poses no barrier to jurisdiction here. Suffice it to say that

"[c]ontemporary procedure, with its flexible provisions for wide joinder of parties and claims, for separate trial of separate issues where necessary, and for shaping the judgment to the necessities of the case, is well adapted to disposing of interpleader cases where independent liability is asserted, and there is no reason today, under either the statute or the rule, for continuing to impose a restriction which has no claim to validity save that it is old."

Wright, Federal Courts § 74, at 279–80 (1963). The weight of authority is in accord with this view. See, e. g., Builders & Developers Corp. v. Manassas Iron & Steel Co., 208 F.Supp. 485 (D.Md. 1962); 2 Barron & Holtzoff, Federal Practice § 551, at 234 (Wright ed. 1961); ALI, Study of the Division of Jurisdiction Between State and Federal Courts § 1335, comment, p. 158 (Proposed Final Draft No. 1). Dean-Atlantic's motion to dismiss for lack of interpleader jurisdiction is therefore denied.

2. *The conflicting claims to the fund deposited in court*

Dean-Atlantic's motions for summary judgment against Stuyvesant and to dismiss the Commissioner's cross-claim pose directly the question of who is entitled to the fund of $65,000 deposited in court by Stuyvesant. Stuyvesant admits liability in that amount on its bond. Dean-Atlantic, having obtained a judgment against Empire for $65,000, is entitled to the sum on deposit unless the Commissioner's cross-claim is sustained.

The position of the Commissioner is somewhat difficult to understand. In essence it appears to be as follows:

(1) The attorney who on behalf of the Commissioner negotiated and executed the stipulation with Dean-Atlantic settling the New York action against Empire acted without authority. ·

(2) The prior decision of the Appellate Division, Second Department, in Dean Constr. Co. v. Agricultural Ins. Co., supra, which affirmed the denial of the Commissioner's motion for abatement of the action was wrongly decided.

(3) The judgment of $65,000 in favor of · Dean-Atlantic and against Empire entered upon the stipulation in the New

surrender value [of an insurance policy] while the other wishes to continue the insurance in full force." Chafee, The Federal Interpleader Act of 1936: I, 45 Yale L.J. 963, 977 (1936). Here Dean-Atlantic demands payment under the terms of the bond. The Commissioner, on the other hand, seeks to prevent any payment under the bond in the belief that to the ex-

tent the bond obligation to Dean-Atlantic is impaired the likelihood of the Commissioner's recovering the collateral will be enhanced. In addition—though the argument has not been made here—the Commissioner's claim to the obligation on the bond could be premised upon a constructive trust theory. Cf. Baron Bros. Co. v. Stewart, 182 F.Supp. 893 (S.D.N.Y.1960).

York Supreme Court is therefore null and void.

(4) Consequently Dean-Atlantic has no right to recover on the Stuyvesant bond and the Commissioner, as liquidator of Empire's assets by order of the Pennsylvania Court, has the right to the collateral held by Stuyvesant as part of Empire's assets for the benefit of the general creditors.

■ The difficulty with the Commissioner's position is that it ignores fundamental and well-settled principles of res judicata. Under these principles the Commissioner is firmly bound by the Dean-Atlantic judgment against Empire and is foreclosed from collaterally attacking it on the grounds she now urges.

In the first place, there is no merit to the Commissioner's contention that the stipulation of settlement and the judgment thereon were entered into by her attorney acting without authority. This very question was fully litigated on the Commissioner's motion in the New York Supreme Court to set aside the settlement and judgment in the Dean-Atlantic action; it was determined adversely to her. Justice Brennan, after a hearing, found that the Commissioner's attorney had full authority to act on her behalf. He further held that the decision of the Second Department in the Dean-Atlantic suit against Empire adverse to the Commissioner was merely one of the factors which induced the settlement, and that the constitutional and other grounds on which the Commissioner attacked that decision furnished no basis for relief from the judgment against Empire. The order of Justice Brennan affirmed by the Appellate Division determined that there was no basis for setting aside the stipulation of settlement and the judgment entered thereon. That decision is res judicata as to the validity of the judgment. The Commissioner as Empire's successor in interest and the adversary party in those proceedings cannot relitigate the issues here. See Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L. Ed. 488 (1947).

Since the stipulation of settlement was fully authorized by the Commissioner, there remains only the question of the effect of the judgment entered upon that stipulation.

■ There is no doubt that a judgment entered upon a settlement is res judicata as to all questions which were or could have been litigated in the action in which the judgment was entered. E. g., Stella v. Kaiser, 218 F.2d 64 (2 Cir. 1954), cert. den., 350 U.S. 835, 76 S.Ct. 71, 100 L.Ed. 745 (1955); Larme Estates, Inc. v. Omnichrome Corp., 250 App.Div. 538, 294 N.Y.S. 861 (1st Dep't), aff'd, 275 N.Y. 426, 10 N.E.2d 793 (1937). Though the judgment entered pursuant to the stipulation was against Empire alone, the Commissioner as successor in interest to Empire, and as the party then actually defending the suit on its behalf, is fully bound by the judgment under traditional notions of privity. See, e. g., Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1947); Annot., 162 A.L.R. 1024 (1946).

■ It may be, as the Commissioner urges, that the Second Department in Dean Constr. Co. v. Agricultural Ins. Co. erred in its conclusion that the action was not abated by the dissolution of Empire under the order of the Pennsylvania court. See Kelly v. Overseas Investors, Inc., 24 A.D.2d 157, 264 N.Y.2d 586 (1st Dep't 1965) (Breitel, J.). If this was so, however, the Commissioner could have appealed to the New York Court of Appeals, and if necessary, applied for certiorari to the Supreme Court of the United States. Instead the Commissioner chose to enter into a settlement authorizing the entry of the $65,000 judgment against Empire in favor of Dean-Atlantic. Having chosen not to pursue her rights on appeal the Commissioner is forbidden by salutary principles of res judicata from litigating on collateral attack questions which she could have raised in the litigation in which the judgment was entered. See Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1947); Roche v. McDonald, 275 U.S. 449, 48 S.Ct. 142, 72 L.Ed. 365 (1928); Angel v.

Bullington, 330 U.S. 183, 190–191, 67 S. Ct. 657, 91 L.Ed. 832 (1947).

▮ These commendable principles of res judicata operate with equal force where constitutional questions are involved. Angel v. Bullington, supra; Treines v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939); Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26 (1938); Baltimore Steamship Co. v. Phillips, 274 U.S. 316, 325, 47 S.Ct. 600, 71 L.Ed. 1069 (1927). And this is so even though the settlement culminating in the entry of judgment against Empire may have resulted from an erroneous view of the law by the parties, or indeed, from an incorrect decision in Dean Constr. Co. v. Agricultural Ins. Co. See Fauntleroy v. Lum, 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039 (1908) (Holmes, J.).

The judgment is no less binding because the constitutional questions on which the Commissioner now relies were not actually passed upon in the *Dean* case or, indeed, by any court of law. Her position misapprehends the effect of the judgment which is res judicata here. As was said in Angel v. Bullington, supra, 330 U.S. at 190, 67 S.Ct. at 661:

> "It is a misconception of *res judicata* to assume that the doctrine does not come into operation if a court has not passed on the 'merits' in the sense of the ultimate substantive issues of a litigation. An adjudication declining to reach such ultimate substantive issues may bar a second attempt to reach them in another court of the State. * * * And that is the essence of the present case."

Thus the judgment against Empire entered on the settlement operates as a bar against the Commissioner and "prevents relitigation of all grounds for, or defenses to, recovery that were then available to the parties before the particular court rendering the judgment, in relation to the same claim—regardless of whether all grounds for recovery or defenses were judicially determined." 1B Moore, Fed-

eral Practice ¶ 0.405, at 622 (2d ed. 1965); see Hahl v. Sugo, 169 N.Y. 109, 62 N.E. 135, 61 L.R.A. 226 (1901).

▮ It is immaterial that the settlement entered into was improvident or that the Commissioner's rights to raise constitutional and other questions in the state litigation were unwisely relinquished or abandoned. Res judicata guards against such hindsight as was displayed here. The principle of res judicata, particularly appropriate in these proceedings, "seeks to bring litigation to an end and promote certainty in legal relations." United States v. Munsingwear, Inc., 340 U.S. 36, 38, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950).

Dean-Atlantic's right to recover $65,000 against Empire was fixed with certainty by the judgment entered in the New York action. The Commissioner's cross-claim seeking to upset that judgment on collateral attack must therefore be dismissed.

It may be noted, however, that in dismissing the cross-claim I do not pass on the respective rights of Dean-Atlantic and the Commissioner under the agreement of December 1, 1964, providing for allocation of the $65,000 to be collected on the bond on the basis of $50,000 to Dean-Atlantic and $15,000 to the Commissioner, less the expenses of subsequent litigation.[7] Both of the parties have suggested that controversies arising out of that agreement be excluded from consideration in this action and that they be left to such other remedies as may be available to them. That request is granted.

3. *Dean-Atlantic's motion for summary judgment awarding it the $65,000 deposited in court and for further relief against Stuyvesant*

As I have previously indicated, once the cross-claim of the Commissioner is dismissed the Dean-Atlantic motion for summary judgment against Stuyvesant directing payment of the $65,000 deposited in court must be granted.

---

7. See note 4, supra.

Stuyvesant admits that it is liable on its bond to pay the sum of $65,000 in satisfaction of the Dean-Atlantic judgment against Empire. On that theory Stuyvesant deposited the face amount of the bond in court. What prompted the commencement of this interpleader action was whether payment should properly be made to Dean-Atlantic or to the Commissioner.

Since I have held that the Dean-Atlantic judgment against Empire was valid and that the Commissioner's cross-claim to set it aside must be dismissed, Dean-Atlantic is entitled to receive payment of the $65,000 in satisfaction of its judgment against Empire.

However, in addition to the face amount of the bond, Dean-Atlantic contends that Stuyvesant is required to pay interest on the principal sum. The question of Dean-Atlantic's right to interest will be deferred until after discussion of Stuyvesant's motion for exoneration.

### 4. *Stuyvesant's motion for summary judgment exonerating it from liability*

Stuyvesant has moved for summary judgment against all the defendants to exonerate itself from any liability other than for the $65,000 which has been paid into court. Stuyvesant maintains that the deposit of this sum in satisfaction of its obligations under the bond automatically entitles it to reimbursement in the amount of the $65,000 cash held as collateral. The claim to reimbursement is based on a "collateral receipt" [8] which Stuyvesant gave to Empire in return for the $65,000 collateral.

There is no doubt that under the operative terms of the receipt the "collat-

eral shall be solely for the benefit" of Stuyvesant to the extent it incurs liability "in connection with [the] bond." Having discharged its obligation on the bond, Stuyvesant can properly reimburse itself from the collateral held for its protection.

The Commissioner does not seriously contest the right of Stuyvesant to reimbursement if the Dean-Atlantic judgment is entitled to full force and effect. Indeed, her whole claim in this action is based on the premise that the judgment is invalid, that therefore Stuyvesant is under no obligation to make payment on its bond and that the Commissioner may recover the collateral as an asset of Empire. Since I have held that this contention is without merit, the Commissioner has no claim to the collateral or against Stuyvesant.

Defendant Johnson concedes that, as a Pennsylvania creditor of Empire, her interests coincide with those of the Commissioner. Johnson has asserted no cross-claim here. Since Stuyvesant is entitled to the $65,000 held as collateral, neither the Commissioner nor Johnson has any right to that sum.

Stuyvesant is entitled to summary judgment against all parties exonerating it from liability on the bond and the collateral beyond the amount deposited in court, with the exception of such interest, if any, as may be owing to Dean-Atlantic on the bond obligation. Stuyvesant is also entitled to an order "restraining [all the claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action." 28 U.S.C. § 2361. Accordingly, the parties will be restrained from proceeding in

---

8. The collateral receipt provides in part:
"It is agreed that the above described [$65,000 cash] collateral has been pledged to and deposited with the Stuyvesant Insurance Company (hereafter called Company) by the Owners [Empire] as security (a) against any and all liability, loss, costs, damages, expenses and attorney's fees arising or incurred in connection with any bond, recognizance, undertaking or other obligation * * *,

heretofore or hereafter executed, assumed or procured by the Company at the instance or request of [Empire], and (b) for the performance of every agreement * * * made by [Empire] * * * in connection with said bonds, and the payment of all premiums thereon.
"Said collateral shall be solely for the benefit of the Company, its reinsurers and co-sureties on said bonds and its and their successors and assigns."

any forum to enforce claims arising out of the bond or the collateral. See 28 U.S.C. §§ 1335, 2361.

### 5. *Dean-Atlantic's claim for interest*

Dean-Atlantic urges that Stuyvesant should be required to pay interest on the face amount of the bond from December 2, 1964, the date of entry of its judgment against Empire.

Stuyvesant denies liability for interest. It points out that the extensive proceedings by the Commissioner to set aside the stipulation of settlement and the judgment were pending and not determined until October 28, 1965, when the New York Court of Appeals dismissed the appeal by the Commissioner from the affirmance of Justice Brennan's order; that it was stayed by orders of the New York courts from making payment under the bond from January 12, 1965 until November 8, 1965, when it received the Court of Appeals order with notice of entry, only two days before the commencement of this action; and that since December 2, 1964 the $65,000 collateral on the bond was continuously held in a separate non-interest bearing account and it therefore cannot be charged with any unjust enrichment.

As a general rule under controlling New York law "[i]nterest as an item of damages [begins] to run against [the] surety from the date when it [becomes] obligated to pay on its surety bond." Muscolino v. Keppel, 17 App.Div. 2d 776, 232 N.Y.S.2d 569, 570 (1st Dep't 1962) (per curiam), aff'd mem, 13 N.Y. 2d 693, 241 N.Y.S.2d 173, 191 N.E.2d 675 (1963); see Marcus v. United States Cas. Co., 222 App.Div. 508, 226 N.Y.Supp. 601 (1st Dep't 1928). The problem here is to determine just when Stuyvesant became obligated to pay on the $65,000 bond obligation. N.Y.C.P.L.R. § 5001 (b).

Interest accrues only when the surety is in default. And as a matter of equity New York recognizes that a "surety on a bond * * * is chargeable with interest, not from the default of the principal, but from the time when he could have safely paid the same providing he then unjustly withholds it." Tuzzeo v. American Bonding Co., 226 N.Y. 171, 123 N.E. 142 (1919); see Aetna Cas. & Surety Co. v. B.B.B. Const. Corp., 173 F. 2d 307 (2 Cir.), cert. den., 337 U.S. 917, 69 S.Ct. 1158, 93 L.Ed. 1726 (1949); In re Reiss' Estate, 203 Misc. 144, 116 N.Y.S.2d 737 (Surr.Ct. 1952).

Plainly, Stuyvesant could not have safely made payment on the bond until the Commissioner's proceedings to vacate the Empire judgment had been finally concluded. Nor could Stuyvesant be deemed to have been in default by withholding payment in compliance with outstanding orders of the court. See, e. g., Hurdman v. Birckhead, 37 N.Y.S.2d 154 (Sup.Ct. 1942); Bank of China v. Wells Fargo Bank & Union Trust Co., 209 F.2d 467, 476 (9 Cir. 1953). See also New York Life Ins. Co. v. Cooper, 76 F. Supp. 976 (S.D.N.Y.1944). Moreover, since there was no interest accruing on the collateral in the meantime, Stuyvesant was not unjustly enriched by the delay. Hurdman v. Birckhead, supra.

However, by the commencement of this interpleader action Stuyvesant admitted its liability to pay on the bond and at that point should have satisfied that liability by paying the amount due into court. Beaudry v. Royal Indemnity Co., 201 Misc. 1, 112 N.Y.S.2d 507 (City Ct. 1952); Mintz v. Prudential Ins. Co., 38 Misc.2d 394, 238 N.Y.S.2d 483 (Sup.Ct. 1963); see Equitable Life Assurance Soc'y v. Miller, 229 F.Supp. 1018 (D. Minn.1964). It did not make such deposit until December 7, 1965. Thus Stuyvesant should be charged with interest from the date of commencement of the interpleader action, November 10, 1965, until the deposit was made on December 7, 1965.[9] Dean-Atlantic may have judgment against Stuyvesant for such interest.

---

9. Of course no interest runs after the deposit in court was made. See New York Life Ins. Co. v. Cooper, 76 F.Supp. 976 (S.D.N.Y.1944).

114

### 6. *Stuyvesant's claim for counsel fees*

Stuyvesant seeks an award of counsel fees under 28 U.S.C. §§ 1335 and 2361.

 Whether or not such an award will be made lies within the sound discretion of the court. Travelers Indemnity Co. v. Israel, 354 F.2d 488 (2 Cir. 1965). As was appropriately said in Paul Revere Life Ins. Co. v. Riddle, 222 F.Supp. 867, 868 (E.D.Tenn.1963):

> "The plaintiff had a right as a stakeholder, acting in good faith, to maintain this action in interpleader to avoid the vexation and expense of resisting the adverse claims, even though its officials believed only one of them was meritorious * * *; but that right did not include a further right to impress the fund with the expense of interpleading it.

> "If the rule were otherwise, every stakeholder confronted with two or more adverse claimants who are claiming, or might claim, to be entitled to money or property could interplead the fund, depositing it in the registry of the court, gain the protection afforded the stakeholder by an adjudication, and, in effect, cause the successful claimant to bear the costs, counsel fees and expenses of the interpleading action."

Accordingly, in the circumstances here and in view of the fact that a substantial part of the services rendered by Stuyvesant's attorney were directed towards resisting Dean-Atlantic's claim to interest, counsel fees will be denied in the exercise of my discretion. See Travelers Indemnity Co. v. Israel, supra; Metropolitan Life Insurance Co. v. Jordan, 221 F. Supp. 842 (W.D.N.C. 1963). See also Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp., 306 F.2d 188, 194 (9 Cir. 1962).

I therefore hold that:

(1) The motion of defendants Dean-Atlantic to dismiss the action for want of interpleader jurisdiction is denied.

(2) The motion of defendants Dean-Atlantic to dismiss the cross-claim of defendant Commissioner is granted.

(3) The motion of defendants Dean-Atlantic for summary judgment directing payment to them of the $65,000 deposited in court by plaintiff Stuyvesant in discharge of its obligation under the bond is granted. The sum so paid will be subject to the provisions of the agreement of December 1, 1964 between Dean-Atlantic and defendant Commissioner. Judgment is also granted in favor of Dean-Atlantic and against Stuyvesant for the amount of interest on said sum from November 10, 1965 to December 7, 1965.

(4) The motion for summary judgment of plaintiff Stuyvesant for exoneration from liability with respect to any and all claims arising out of its bond and the collateral held against such bond is granted; Stuyvesant's motion for an injunction against any other actions or proceedings by the parties here on claims arising out of such bond and collateral is also granted.

Judgment accordingly will be settled by Stuyvesant on notice.

It is so ordered.