**IRVING TRUST COMPANY and Fidelity and Deposit Company of Maryland, Plaintiffs,**

v.

**NATIONWIDE LEISURE CORPORATION, et al., Defendants.**

**No. 79 Civ. 261 (WCC).**

United States District Court, S.D. New York.

May 3, 1989.

Carlin & Newton, New York City (Larry M. Carlin, of counsel), for defendant Nationwide Leisure Corp.

Frederic Marin, pro se.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Defendant Nationwide Leisure Corporation ("Nationwide") objects to the Report and Recommendation of Magistrate James C. Francis IV, dated February 21, 1989 (the "Report"), which directed Nationwide to pay defendant Frederic Marin ("Marin") the sum of $1,600.00, together with interest computed from August 11, 1978, at a rate of nine percent per annum. For the reasons set forth below, the Magistrate's findings are modified.

## BACKGROUND

Familiarity with the Report, which is appended to this Opinion, is presumed. Until it ceased operations on August 5, 1978, Nationwide operated a charter flight and vacation tour service. Marin and his wife were booked for Nationwide's "Best of Italy All Inclusive Charter Vacation," scheduled to begin on August 11, 1978, when Nationwide cancelled all its tours. Marin had paid $1,645.00 for the trip by making out two checks to "Quad Travel," a travel agent that booked the Nationwide tour. After the tour was cancelled, Marin promptly filed a $1,600.00 claim with Fidelity and Deposit Company of Maryland ("Fidelity"), Nationwide's surety.

At an evidentiary hearing held before Magistrate Francis on June 14, 1988, Nationwide argued that there was no proof that Quad Travel forwarded Marin's checks to Nationwide. Nationwide maintained that since it never received the checks, Marin's claim should have been directed to Quad Travel, not Fidelity.

Nationwide's claim that the checks were never forwarded was challenged at the hearing. Magistrate Francis, however, felt that this evidentiary conflict was immaterial. He found that since the "Nationwide Leisure Corp. Tour Participant Agreement" (the "Agreement") directed tour participants seeking refunds to send their claims to Nationwide or Fidelity, Nationwide was estopped from asserting that Marin should have directed his claim to Quad Travel. The Magistrate's finding was based on a clause in the Agreement entitled "Bonding":

> A surety has been issued by Fidelity and Deposit Company of Maryland, 110 William St., NY, NY 10038. All claims for refunds due to participant's cancellation must be received in writing by Nationwide Leisure Corp., 1 Huntington Quadrangle, Melville, NY 11746, or if NLC is unavailable, with the surety, within 60 days after the completion of the trip or the surety shall be released from liability under the bond.

Nationwide objects to the Report on the grounds that (1) the Agreement never took effect; and (2) the Magistrate's recommendation regarding interest is improper.

## DISCUSSION

### I. Standard of Review

Rule 72(b), Fed.R.Civ.P., instructs a district court judge to "make a de novo determination ... of any portion of the magis-

trate's disposition to which specific written objection has been made." *See also* 28 U.S.C. § 636(b)(1); *Mokone v. Kelly*, 680 F.Supp. 679, 680 (S.D.N.Y.1988); *Nelson v. Smith*, 618 F.Supp. 1186, 1189 (S.D.N.Y. 1985). After conducting its review, the court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). The rule also permits the court to accept any portion of a magistrate's disposition to which no objection has been made as long as it is not "erroneous on the face of the record." Fed.R.Civ.P. 72, Advisory Committee Notes (citing *Campbell v. United States District Court*, 501 F.2d 196, 206 (9th Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974)).

A *de novo* determination does not require a second evidentiary hearing. Fed.R. Civ.P. 72, Advisory Committee Notes (citing *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980)). The judge's review may be based solely upon the record. Fed.R.Civ.P. 72(b).

In making its *de novo* determination, this Court has reviewed Magistrate Francis' Report, the transcript of the hearing conducted by the Magistrate, the exhibits presented at the hearing, Nationwide's objections to the Report, and Marin's letter in response to Nationwide's objections. Nationwide's objections are addressed below.

## II. Nationwide's Objections

### a. Quad Travel

First, Nationwide asserts that although the Agreement required the travel agency to forward all sums received from tour participants to Nationwide, Quad Travel never gave Nationwide Marin's checks. Nationwide points out that the Agreement provided that the travel agency "must" endorse checks received for the charter price over to Nationwide. It asserts that Marin should have sued Quad Travel, not Nationwide, since Quad Travel and Nationwide are distinct corporate entities.

■ Although it does not use this terminology, Nationwide essentially contends that the provision in the Agreement, "the agent ... must pay the charter price to ... Nationwide Leisure," is a condition precedent. If this is true, the language relied on by the Magistrate is inapplicable; unless all condition precedents to the contract were satisfied, Marin was not a "participant" within the meaning of the Agreement. *See Office of Comptroller General v. International Promotions and Ventures, Ltd.*, 618 F.Supp. 202, 207 (S.D.N.Y. 1985).

Nationwide's suggestion, that the provision concerning the forwarding of checks by the travel agent to Nationwide is a condition precedent, must be rejected, since no intention to create a condition is evinced by the Agreement. "Conditions are not favored, and, in the absence of unambiguous language will not be found by the Court." *Uniroyal, Inc. v. Heller*, 65 F.R. D. 83, 93 (S.D.N.Y.1974). Moreover, it is clear that Nationwide drafted the Agreement, and "[i]n cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language." *Jacobson v. Sassower*, 66 N.Y.2d 991, 993, 499 N.Y.S. 2d 381, 382, 489 N.E.2d 1283, 1284 (1985).

■ Magistrate Francis was correct in dismissing Nationwide's contention that Quad Travel and Nationwide are distinct entities. Quad Travel had the apparent authority to enter into an agreement binding Nationwide. An apparent agency exists where (1) the words or acts of the principal communicated to a third party made it reasonable to believe that the agent possessed the authority to act for the principal, *Hallock v. State of New York*, 64 N.Y.2d 224, 231, 485 N.Y.S.2d 510, 513, 474 N.E.2d 1178, 1181 (1984); (2) the third party relied on this reasonable belief, *Restatement (Second) of Agency* § 27 & comment a; *Greene v. Hellman*, 51 N.Y.2d 197, 204, 433 N.Y.S.2d 75, 80, 412 N.E.2d 1301, 1306 (1980); and (3) the third party made reasonable inquiries as to the ostensible agent's actual authority, *Collision Plan Unlimit-*

*ed, Inc. v. Bankers Trust Company,* 63 N.Y.2d 827, 830, 482 N.Y.S.2d 252, 253, 472 N.E.2d 28, 30 (1984).

The Magistrate's findings suggest the existence of apparent authority. Nationwide provided Quad Travel with a copy of its Agreement, which directed customers to "RESERVE THROUGH THIS TRAVEL EXPERT," and permitted Quad Travel to place its stamp on the document. As the Magistrate points out, "Mr. Marin did not know the 'real facts' in 1978." Report at 6. Marin reasonably believed that Quad Travel was authorized to bind Nationwide. In the context of this routine transaction, Marin's reliance on the Agreement constituted a reasonable inquiry into Quad Travel's actual authority. Marin was justified in assuming that Quad Travel was an authorized agent of Nationwide.

■ The Magistrate's conclusion, that Nationwide is estopped from claiming that Marin should have sent his claim to Quad Travel, must therefore be upheld. The Magistrate found that the Agreement misled Marin into believing that if Nationwide canceled a tour, he should send his claim for reimbursement to Nationwide or Fidelity. If Nationwide wanted to, it could have provided in the Agreement that where the travel agent has not forwarded the check to Nationwide, claims should be directed to the travel agent. It did not. Having implied that it would reimburse participants whose tours are cancelled, Nationwide cannot now contend that Quad Travel's failure to forward the checks bars Marin's claim. Nationwide's remedy, if indeed it was never paid by Quad Travel, is to sue Quad Travel for breach of contract.

b. Interest

Magistrate Francis recommended that Marin be awarded "interest computed from the date his tour was cancelled, August 11, 1978, at a rate of nine percent per annum." Report at 7. Nationwide objects to this recommendation on three grounds: (1) the interpleader statute does not provide for an award of interest, *see, e.g., Provident Indemnity Life Insurance Company v. Durbin,* 541 F.Supp. 4, 9 n. 4 (E.D.Pa.1981)

("An insurer in an interpleader action cannot be held liable for prejudgment interest after the date of deposit of the insurance proceeds with the court.") (citing *Stuyvesant Insurance Co. v. Dean Construction Co.,* 254 F.Supp. 102, 113 n. 9 (S.D.N.Y. 1966), *aff'd* 382 F.2d 991 (2d Cir.1967)); (2) Nationwide should not be penalized for the delay in resolving the hundreds of claims in this suit; and (3) the nine percent rate imposed by the Magistrate is higher than the average rate between 1978 and the present time.

The Magistrate's recommendation with respect to Marin's right to prejudgment interest is affirmed. I agree with Nationwide, however, that the rate recommended in the Report is too high. The Magistrate's findings are therefore modified.

■ It would be illogical to apply the *Stuyvesant* rule, that a disinterested stakeholder cannot be held liable for prejudgment interest after depositing the fund with the court, in favor of a claimant who has already been given the entire fund and the interest earned thereon. On January 4, 1989, the Court paid Nationwide the fund, along with all interest earned. Fairness dictates that Marin be awarded an appropriate share of this interest. *See First Commercial Corporation v. First National Bancorporation, Inc.,* 572 F.Supp. 1430, 1435 (D.Colo.1983) (interest earned by court on interpleaded fund was distributed proportionately to claimants).

■ Moreover, in an interpleader case based on diversity of citizenship, state law governs the award of prejudgment interest, *see Griffin v. McCoach,* 313 U.S. 498, 503, 61 S.Ct. 1023, 1025, 85 L.Ed. 1481 (1941) (federal courts sitting in diversity will apply the forum's conflict of law rules in interpleader actions); *Stuyvesant,* 254 F.Supp. at 113 (applying New York law); 3A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 22.14[5] (2d ed. 1987), and New York law mandates an award of prejudgment interest in breach of contract cases. N.Y.Civ.Prac.L. & R. § 5001(a) (McKinney 1963); *see Adams v. Lindbland Travel,* 730 F.2d 89, 93 (2d Cir.

1984). Such interest should be calculated from the date of breach. N.Y.Civ.Prac.L. & R. § 5001(b); *see Van Gemert v. Boeing Co.*, 553 F.2d 812, 815 (2d Cir.1977).

■ New York law also provides that "[i]nterest shall be at the rate of nine per centum per annum, except otherwise provided by statute." N.Y.Civ.Prac.L. & R. § 5004 (McKinney Supp.1989). The effective date of this provision, however, is June 25, 1981, and the statute provides: "In actions in which interest is to be computed from a date prior to such effective date, interest shall be computed at the rate of six per centum per annum until such date and nine per centum per annum thereafter." 1981 N.Y.Laws ch. 258 § 2; *see Quintel Corp., N.V. v. Citibank, N.A.*, 606 F.Supp. 898, 915 (S.D.N.Y.1985).

The Magistrate's recommendation is therefore modified with respect to interest. The interest on Marin's $1,600.00 award shall be computed from August 11, 1978, at a rate of six percent until June 25, 1981, and nine percent thereafter.

## CONCLUSION

For the reasons stated above, Magistrate Francis' Report and Recommendation is modified in accordance with this Opinion. Defendant Frederic Marin is entitled to judgment against defendant Nationwide Leisure Corporation in the sum of $1,600.00, together with interest computed from August 11, 1978, at a rate of six percent per annum until June 25, 1981, and nine percent thereafter. A copy of the Magistrate's Report and Recommendation is annexed to this Opinion. Settle judgment on two weeks' notice.

SO ORDERED.

## REPORT AND RECOMMENDATION

JAMES C. FRANCIS, IV, United States Magistrate.

This is an interpleader action commenced by the Irving Trust Company ("Irving Trust") and Fidelity and Deposit Company

of Maryland ("Fidelity") to determine the validity of claims asserted against a surety bond issued by Fidelity on behalf of Nationwide Leisure Corp. ("Nationwide"). I previously recommended that all claims save one be dismissed for failure to comply with notice requirements, for lack of prosecution, or because they had been settled.[1] The remaining claim, asserted by Frederic Marin, was the subject of an evidentiary hearing.

*Background*

Until 1978, Nationwide operated a charter flight and vacation tour service, marketing package tours through travel agents around the United States. As a charter operator, Nationwide was required by federal regulations to deposit monies it received as payment for tours in escrow accounts at a bank with which it had a depository or escrow agreement. Federal regulations also required Nationwide to obtain a surety bond to secure certain obligations to tour participants. Plaintiff Irving Trust was Nationwide's depository bank, and plaintiff Fidelity served as Nationwide's surety.

On August 5, 1978, Nationwide ceased operation and cancelled all scheduled tours. *See Wasserman v. Fidelity and Deposit Co. of Md.*, 490 F.Supp. 564, 565 (S.D.N.Y. 1979). Irving Trust subsequently made refunds from the escrow accounts to some Nationwide customers. On January 16, 1979, Irving and Fidelity commenced this interpleader action by depositing with the Court the $72,458.60 remaining in the escrow accounts at Irving and the $200,000 proceeds of the surety bond issued by Fidelity. Plaintiffs named Nationwide as a defendant, along with some 1600 tour participants who may have had claims against the interpleaded funds.

At the time of Nationwide's demise, Mr. Marin and his wife were booked for the company's fifteen-day "Best of Italy All Inclusive Charter Vacation," which included airfare and superior-class lodging and

---

**1.** Certain claimants have filed objections to the Report and Recommendation dated July 25, 1988.

which was to have begun on August 11, 1978. Plaintiff's Ex. 2. The Marins paid a total of $1645 for their planned trip, in the form of two checks made out to "Quad Travel," their travel agent. Plaintiff's Ex. 1. The tour was cancelled when Nationwide ceased operations. Mr. Marin then filed a claim with Fidelity for $1600 on August 10, 1978 (Plaintiff's Ex. 3), thereby bringing himself within the scope of the current litigation.

All passengers booked for Nationwide flights and tours were required to read and sign the "Nationwide Leisure Corp. Tour Participant Agreement" (the "Agreement") which included, among other provisions, specific instructions regarding claims for refunds. Court Ex. 1.[2] The Agreement, in pertinent part, reads as follows:

> BONDING—A surety bond has been issued by Fidelity and Deposit Company of Maryland, 10 William St., N.Y., N.Y. 10038. All claims for refund provided in this participant agreement must be filed with Nationwide Leisure Corp. Only if Nationwide Leisure Corp. is unavailable should such claims be filed with the surety. In either case, all claims for refund provided for in this participant agreement must be filed as directed in this paragraph within 60 days after the completion of the charter or tour, or the surety shall be released from all liability under the bond to such participant.

*Id.* Upon notice that Nationwide had ceased operations, Mr. Marin followed the express instructions of the Agreement and directed his claim to Fidelity within 60 days of the date of the cancelled trip.

Nationwide now asserts that Mr. Marin's claim must fail because it should have been directed to Quad Travel, the travel agency that Mr. Marin had paid for his Nationwide tour package. (Tr. 9).[3]

*Discussion*

The Agreement expressly directed participants seeking refunds for cancelled tours to make their claim to Nationwide or to Fidelity. As a result, Nationwide is now estopped from claiming that Mr. Marin should have made his claim to Quad Travel.

"Estoppel is an equitable doctrine which prevents a party from raising a claim or taking a legal position when his conduct with regard to that claim is contrary to his position." *Matter of Garfinkle*, 672 F.2d 1340, 1346–47 (11th Cir.1982). The essential elements of equitable estoppel are conduct by the party to be estopped which amounts to "false representation or concealment of material facts or which gives the impression that the facts are otherwise than as asserted," an intention or expectation that such conduct would be relied upon by the other party, and actual or constructive knowledge of the "real facts" by the party to be estopped. The party asserting estoppel must have demonstrated a lack of knowledge of the "real facts" or lack of a means to acquire such knowledge, and must have relied on the other party's misrepresentations by taking "action based thereon resulting in a prejudicial change in position." *United States v. Bedford Associates*, 491 F.Supp. 851, 867 (S.D.N.Y.1980), *aff'd in pertinent part*, 657 F.2d 1300 (2d Cir.1981), *cert. denied*, 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982). *See Margate Industries, Inc. v. Samincorp Inc.*, 582 F.Supp. 611 (S.D.N.Y.1984); *Deutsch v. Health Ins. Plan of Greater New York*, 573 F.Supp. 1433 (S.D.N.Y. 1983); *Special Event Entertainment v. Rockefeller Center*, 458 F.Supp. 72 (S.D.N.Y.1978).

The "real facts" now asserted by Nationwide but misrepresented in the Agreement concern the contractual relationship and potential liability of Nationwide to tour participants seeking refunds. Nationwide now asserts that it has no responsibility to pay a refund to Mr. Marin and that he should have sought his refund not from Nation-

---

2. The Agreement was not introduced as an exhibit at the hearing on this matter. However, by order dated February 6, 1989, I indicated my intention to consider it as evidence unless I received any valid objection by February 14, 1989. No objection was made.

3. "Tr." refers to the transcript of the hearing conducted on June 14, 1988. This transcript was not provided to the Court until January 19, 1989.

wide or Fidelity but from Quad Travel. The language of the Agreement misrepresents this state of affairs, and Nationwide clearly expected tour participants to rely on this language. If Nationwide felt it had no direct liability to tour participants who had booked space on its tours through travel agents, the company should not have instructed these participants to file their claims with Nationwide or Fidelity.

Nationwide bases its argument against liability on the fact that Nationwide and Quad Travel were "totally separate corporate entities," and asserts that Nationwide therefore has no responsibility to refund monies paid to Quad Travel. (Tr. 13). Mr. James Nadel, chairman of the board of Nationwide, testified that in 1977 and 1978 Quad Travel "resided in a separate corporate entity to keep it separated" from Nationwide. (Tr. 13). Thus, if this testimony is credited, Nationwide had actual knowledge in 1978 that it would not have a direct contractual relationship with Quad Travel customers, yet did not disclose this material fact in the Agreement or elsewhere—indeed, this information was concealed by the language of the Agreement. The facts now asserted by Nationwide were further obscured by the fact that Quad Travel's cancelled checks were stamped "Quad Travel Division of Nationwide Leisure Corp." Plaintiff's Ex. 1.

Mr. Marin did not know the "real facts" in 1978. He did not know that Nationwide and Quad Travel were separate corporate entities or that he was supposed to tender refund requests to Quad. He testified that Lorraine Merden, the Quad representative who arranged his trip, told him that Quad Travel was "part of Nationwide Leisure."[4] (Tr. 22–23). His cancelled checks suggested the same thing, and the Agreement instructed him to tender refund requests to Nationwide or to Fidelity.

When Nationwide ceased operations in August 1978, it became "unavailable" for the purpose of providing refunds as outlined in the Agreement. Mr. Marin thereafter filed his claim with Fidelity, in re-

liance on the express representations of the Agreement and according to its exact instructions. Mr. Marin's decision to pursue a refund through the steps outlined in the Agreement, rather than through negotiations or through a lawsuit against Quad, was prejudicial to his interests, in light of Nationwide's subsequent disavowal of liability.

Thus, the elements necessary to prove estoppel have been shown. Under this equitable doctrine, a party that enters into a beneficial transaction with full knowledge of the facts "may not subsequently take an inconsistent position to avoid the corresponding obligations or effects." *Kaneb Services, Inc. v. Federal Savings and Loan Insurance Corporation,* 650 F.2d 78, 81 (5th Cir.1981). Nationwide's current position is inconsistent with the language of the Agreement and with the impression given to Mr. Marin in 1978, and is therefore untenable.

*Conclusion*

For the reasons set forth above, I recommend that Frederic Marin be awarded the full amount of his claim, $1600.00, together with interest computed from the date his tour was cancelled, August 11, 1978, at the rate of nine percent per annum. Pursuant to Rule 7 of the Rules of Proceedings Before a United States Magistrate, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William C. Conner, Room 1902, and to the chambers of the undersigned, Room 2602.

---

**4.** Although this testimony is not admissible to prove that actual corporate structure, it is ad-

missible to show Mr. Marin's understanding at that time.